630 So.2d 852 (1993)
Idena BUTLER and Joan Butler
v.
Harry CANTRELL, Jr., et al.
No. 93-CA-2535.
Court of Appeal of Louisiana, Fourth Circuit.
December 29, 1993.
Writ Denied January 5, 1994.
*853 Milton Osborne, Jr., New Orleans, for plaintiffs/appellants.
Henry P. Julien, Jr., Julien & Julien, New Orleans, for defendants/appellees.
Sheri Marcus Morris, Asst. Atty. Gen., Baton Rouge, for defendants/appellees.
Before LOBRANO, JONES and WALTZER, JJ.
WALTZER, Judge.
This is an appeal from a judgment rendered on December 22, 1993 by the Honorable Robert A. Katz, Judge of the Civil District Court for the Parish of Orleans, dismissing with prejudice the petition of Idena Butler and Joan Butler (Butlers). The Butlers sought to disqualify defendants-appellees Harry Cantrell, Jr., Julius C. Feltus and Horace Batiste, who had previously qualified as candidates for the position of Assessor of the First Municipal District for the City of New Orleans, in the election to be held on February 5, 1994. The Butlers alleged that these defendants were not qualified to stand for election to the position of First Municipal District Assessor because at the time of qualification they were not residents of that District.
The matter came on for hearing before Judge Katz on December 21 and 22, 1993, was taken under submission, and the judgment appealed from herein was signed on December 22, 1993. Cantrell, Feltus and Batiste moved to dismiss the appeal, alleging that the plaintiffs' appeal bond was untimely filed, and that the surety, whom they allege to be a licensed attorney, is disqualified by law from serving in that capacity.
The record of the trial proceedings was lodged in this Court after 4:00 p.m. on December 27, 1993, and oral argument was heard at 2:00 p.m. on December 28, 1993.

APPELLANTS' MOTION TO DISMISS
Cantrell, Feltus and Batiste urge this Court to dismiss the Butlers' appeal, alleging that the judgment was rendered at 3:00 p.m. on December 23rd and the appeal bond was not filed until 3:16 p.m. on December 24th, sixteen minutes beyond the twenty-four hours allowed for perfection of appeal.
The record does not show the exact time at which the judgment was rendered, and defendants apparently rely on an oral representation made out of court by an unidentified member of the Civil District Court clerical staff. We find the defendants have failed to prove that the appeal bond was untimely filed. Were the bond filed sixteen minutes tardily, we do not believe the late filing to be material to the case. We find this delay to be analogous to that relied on unsuccessfully by the petitioner in Mix v. Alexander, 318 So.2d 130 (La.App. 4th Cir.1975). There, petitioner sought to strike defendant's answer, which was required to be filed within forty-eight hours of the filing of the original petition. LSA-R.S. 18:396. We find the court's reasoning to be applicable in the case at bar:
While the record does not contain a return showing the date and time of service of the petition on the defendant, even assuming the answer was filed several hours later than the permissible forty-eight hours as is indicated by counsel, we are of the opinion that the late filing is immaterial in this case. A reading of the statute in its entirety convinces us the intent of the legislature regarding the time limitations was to shorten the delays allowed for instituting judicial proceedings in election matters and to provide for their necessary rapid and expeditious consummation. We find *854 nothing in the statute to indicate the fortyeight hour limit within which to file an answer is jurisdictional. 318 So.2d at 133-134.
We are unable to determine from the record that the bond surety is an attorney and disqualified by law from serving as surety. Cantrell, Feltus and Batiste have failed to offer evidence to support their motion to dismiss by reason of the nullity of the appeal bond.
For the foregoing reasons, the motion of Harry Cantrell, Julius Feltus and Horace Batiste to dismiss the appeal of Idena Butler and Joan Butler is denied.

DISQUALIFICATION ISSUES
We find that the evidence of record amply supports the well reasoned factual conclusions set forth in the trial court's reasons for judgment. Absent manifest error, we adopt these findings of fact and accept the trial court's determinations of credibility of the witnesses who testified at the hearing below. Rosell v. ESCO, 549 So.2d 840 (La.1989); Canter v. Koehring Company, 283 So.2d 716 (La.1973). The trial judge found the following facts applicable to each of the three defendants:
"HARRY CANTRELL, JR. Mr. Cantrell testified that his wife, children and he live [in] a residence on Brainard St. but that he subleases a suite at 1315 Gravier Street for the last two months from Mr. Broussard for $800.00 per month. He also testified that he spends three or four nights a week there. He admitted that all of the utilities on the Brainard St. address come to the Brainard St. address and that his wife and children have never spent the night at Gravier St.
"On the day of the trial Mr. Cantrell went to the Registrar of Voters' Office and changed his voting address from the Brainard St. address to 1315 Gravier St.
"Mr. Cantrell produced a key to suite 1209 at 1315 Gravier St., which he testified is the key to the suite that he subleases from Mr. Broussard.
"The comptroller for the Comfort Inn at 1315 Gravier St. testified that they do not have a written lease with Mr. Broussard for the suite that he subleased to Mr. Cantrell and that prior to testifying he checked with the manager and there is an oral policy not to permit tenants to sublease the premises.
"It was stipulated that Brainard St. is not within the First Municipal District but that 1315 Gravier St. is.
"JULIUS C. FELTUS. Mr. Feltus testified that he, his wife and children reside on Garfield St. which is not in the First Municipal District. He further testified that: All of the utilities on the Garfield residence go to the Garfield St. address; he rents a room from Mr. Batiste at 1619 Baronne St. which is in the First Municipal District; he pays Mr. Batiste $300.00 a month and has been so doing this since January, 1993; he has changed his voting precinct to 1619 Baronne St.; he has a key to 1619 Baronne St. although he does not have the access code to the alarm system; he has a room that he uses at Baronne St. and has some articles of clothing there.
"HORACE BATISTE. Mr. Batiste testified that his correct address is 1619 Baronne St. and not 1916 Baronne St.which is the address on the candidacy form filed with the Clerk of Court. He also testified that: he is the owner of the premises at 1619 Baronne St.; he subleases a room to Mr. Feltus for $300 a month although there are no written receipts to corroborate this exchange of money; Mr. Feltus does have a key to the premises but does not know the access code to the alarm system."

LEGAL CONCLUSIONS
The qualifications of candidates for the position of tax assessor in the Parish of Orleans are set out in the Louisiana Constitution of 1974, Article 7 § 24(B):
"There shall be seven assessors in New Orleans, who shall compose the Board of Assessors for Orleans Parish. One shall be elected from each municipal district of New Orleans, and each shall be a resident *855 of the district from which he is elected...."[1]
The Election Code provides for the time at which a candidate must meet the qualification requirements of the office he seeks:
"... Except as otherwise provided by law, a candidate shall possess the qualifications for the office he seeks at the time he qualifies for that office...." LSA R.S. 18:451.
The Butlers allege that the various habitations of Cantrell, Feltus and Batiste fall short of the "residence" required by our state Constitution. In seeking to thwart the candidacy of these citizens, the Butlers bear the burden of proving that each defendant is disqualified from seeking the Assessor's office. The Louisiana Supreme Court sets a high standard for the Butlers:
"In an election contest, the person objecting to the candidacy bears the burden of proving the candidate is disqualified. La. R.S. 18:492; Slocum v. DeWitt, 374 So.2d 755 (La.App. 3rd Cir.1979), writ denied, 375 So.2d 1182 (La.1979); Mix v. Alexander, 318 So.2d 130 (La.App. 4th Cir.1975); Charbonnet v. Hayes, 318 So.2d 917 (La. App. 4th Cir.1975), application denied, 320 So.2d 201 (La.1975). The laws governing the conduct of elections must be liberally interpreted so as to promote rather than defeat candidacy. Rich v. Martin, 259 So.2d 113 (La.App. 1st Cir.1971), writ denied, 261 La. 313, 259 So.2d 336 (1972). Any doubt as to qualifications of a candidate should be resolved in favor of permitting the candidate to run for public office. Slocum, 374 So.2d at 758." Dixon v. Hughes, 587 So.2d 679 (La.1991).
The facts surrounding the individual residencies of each of the three candidate-defendants differ significantly.
The sole ground for Batiste's disqualification is the transposition of the numbers of his municipal address as shown on his statement of candidacy, i.e., 1916 rather than 1619 Baronne Street. We believe Justice Tate's opinion in Roe v. Picou, 361 So.2d 874, 878 (La.1978) to be dispositive of this issue:
"In similarly rejecting technical objections to the sufficiency of a notice of candidacy, we stated long ago that the election laws do not `indicate that it was the purpose of the law makers to obstruct with mere technical difficulties, the exercise of the right, which every citizen has, to seek the approval of his political associates, or of the public at large. To the contrary, the whole spirit of the legislation is to encourage the multiplication of worthy candidates for nomination to public office, in order that the body of voters constituting a political party, or constituting the electorate at large, may have the benefit of a choice, and not be compelled to accept candidates chosen by the minority or thrust upon them in some other way.' Langridge v. Dauenhauer, 120 La. 450, 452-53, 45 So. 387, 388 (1908)."
We find Judge Katz' judgment dismissing the Butlers' petition against Batiste to be consistent with the spirit of the election laws as so eloquently defined by Justice Tate and affirm that judgment.
Feltus presents a different issue, but the same result. Clearly, Feltus is domiciled with his family at the family home on Garfield Street. The issue is residency, however, not domicile, and the significant distinction between the two concepts has long been recognized in Louisiana law. It is plain that a Louisiana citizen may legally maintain as many residences as he wishes and his means will allow. Stavis v. Engler, 202 So.2d 672 (La.App.1967); Slocum v. DeWitt, 374 So.2d 755, 758 (La.App. 3rd Cir.1979); Wilson v. Butler, 513 So.2d 304 (La.App. 1st Cir.1987). Residency is not to be confused with the *856 stricter concept of domicile. Brown v. Democratic Committee, Court of Appeal, Fourth Circuit, Third Dist., 238 So.2d 48 (La.App. 4th Cir.1970).
"The jurisprudence reflects that the term `resident' is not to be confused with the term `domicile'. The word `domicile' means `the principal domestic establishment.' A person can have only one `domicile', but may have more than one residence and, even though one of such residences may be maintained for political purposes, such fact does not prevent the residence from being bona fide." Soileau v. Board of Sup'rs, St. Martin Parish, 361 So.2d 319, 321-322 (La.App. 3rd Cir.1978). (Emphasis added).
The Louisiana Second Circuit reached the same conclusion in Williamson v. Village of Baskin, 339 So.2d 474 (La.App. 2nd Cir. 1976), writ denied, 341 So.2d 1126 (La.1977):
"A person may maintain more than one residence and the fact that one is maintained for political purposes does not itself prevent the residence from being actual and bona fide. Intent to maintain a residence is an important factor, but intent alone does not establish a bona fide residence. There must be actual, physical use or occupation of quarters for living purposes before residence is established."
The Soileau court also held:
"There is no minimal durational period required for the establishment of such a residence. The intent to establish a residence, coupled with physical actions denoting the acquisition of a residence is sufficient." 361 So.2d at 322.
This standard was clearly met by Mr. Feltus, whose rental arrangement with Mr. Batiste, voter registration at the Baronne Street address, actual votes cast from that residence, and access by key to the house offer sufficient factual basis for Judge Katz' finding of residency.
Mr. Cantrell's case without doubt requires the most liberal stretch of the concept of residency. The Election Code, as noted hereinabove, requires a candidate for office to be qualified to run at the time of his application. Unless otherwise provided by law, the candidate's qualification to offer himself for election is determined when he files with the Clerk of Court as a candidate for public office. Foley v. Dowling, 445 So.2d 785 (La.App. 2nd Cir.1984). Judge Garsaud, speaking for the majority of this court, held in Montelepre v. Edwards, 359 So.2d 1311 (La.App. 4th Cir.1978):
"R.S. 18:451 is perhaps imprecisely drawn,... [n]evertheless, ... taken as a whole, that section refers to qualifications for candidacy, which by definition means that one must possess the requisite qualifications for a position at the time one qualifies to seek that position; ... The section in question is found in Chapter 5 of the Election Code, entitled `Primary and General Elections,' and in Part IV of that chapter, entitled `Candidates.' Further, the title of § 451 itself is `Qualifications of Candidates.' Additionally, the language of the first sentence clearly refers to the qualifications one must have when one qualifies as a candidate.... [T]he operative word here is `qualifies,' and ... in the context of this section as well as in the context of elections generally, `qualifies' is normally understood to mean `qualifies to become a candidate.' One does not `qualify' when one is elected; rather, one `assumes office' or `takes office.' By using the term `qualifies', the legislature is still referring to a candidate or his candidacy, as opposed to his capacity [to serve] as a duly elected official." 359 So.2d at 1314.
Mr. Cantrell's post-qualification transfer of voter registration from his family home (and presumed domicile) on Brainard Street to the hotel located at 1315 Gravier Street, while effective for purposes of allowing him to cast his vote on election day within the First Municipal District, is irrelevant to support his claim of residence within the District and qualification to submit his candidacy for the office of that District's Assessor.
In light of the liberal standard for residency and the election laws' goal of providing a multiplicity of candidates from whom the voters can themselves choose those candidates whose ability and integrity most commend them to those voters, we do not find Judge Katz' finding that Cantrell is a resident of *857 the First Municipal District to be manifestly erroneous, and we affirm. Rosell v. ESCO, supra; Canter v. Koehring Company, supra. The trial Judge, whose prerogative it is to make determinations of credibility, apparently accepted Cantrell's contention that he holds a sublease to the Comfort Inn suite from Mr. Broussard, as well as Cantrell's testimony that he spends three to four nights a week there. The requisite intent to establish a residence, coupled with the sublease and possession of a key to the suite, satisfy the Dixon v. Hughes standard. See also, Daley v. Morial, 205 So.2d 213 (La.App. 4th Cir.1967), writ refused, December 4, 1967.
For the foregoing reasons, the judgment of the trial court is AFFIRMED, with each party to bear his or her own costs.
AFFIRMED.
NOTES
[1] The Constitution does not define "resident" in this particular context. The election code defines "resident" in the context of qualifications for registration to vote:

"For purposes of the laws governing voter registration and voting, `resident' means a citizen who resides in this state and in the parish, municipality (if any) and precinct in which he offers to register and vote, with an intention to reside there indefinitely. If a citizen resides at more than one place in the state with an intention to reside there indefinitely, he may register and vote only at one of the places at which he resides...." LSA R.S. 18:101(B). (Emphasis added).