PITMAN, J.
Defendant-Appellant Stocky's World Famous Pizza # 14, Inc., d/b/a Smitty's Pizza ("Smitty's Pizza"), appeals the district court's granting of summary judgment in favor of Plaintiff-Appellee Victus 1, Inc., d/b/a Benchmark Business Brokers ("Benchmark"). For the following reasons, we affirm.
FACTS
On July 10, 2017, Benchmark filed a petition for breach of contract against Smitty's Pizza. Benchmark is a company involved in acquiring, selling and franchising businesses, and Smitty's Pizza is a restaurant located in Shreveport. On February 21, 2016, Smitty's Pizza entered into a listing agreement (the "Agreement") with Benchmark granting Benchmark the exclusive right to sell or contract to sell the business, for a period of 12 months. Smitty's Pizza agreed to pay Benchmark a broker fee of 10 percent of the purchase price at the time of the sale. The Agreement provided that if Smitty's Pizza cancels the contract or if the property is withdrawn from the listing for sale during the listing term, the commission, based on the asking price, shall be immediately due by Smitty's Pizza to Benchmark. Prior to *1149 the expiration of the 12-month term, Smitty's Pizza notified Benchmark in a text message from its president that she was "going to keep the place for a while," thereby withdrawing from and terminating the Agreement. Benchmark contended that this termination was a clear violation of the Agreement. It stated that the asking price for the sale of the property was $499,000. Benchmark made demand for the 10 percent broker fee to no avail. It noted that the Agreement provided that should a suit commence to enforce the broker's rights, the prevailing party shall pay expenses in connection therewith, including attorney fees. Benchmark contended that it is entitled to the commission of $49,900, plus attorney fees, expenses, legal interest and all costs of the proceeding.
On July 26, 2017, Smitty's Pizza filed an answer. It admitted the provisions of the Agreement stated in the petition. It alleged that Benchmark's representative expressly released Smitty's Pizza from the Agreement on November 29, 2016, that any obligation was extinguished at that time and that Benchmark should be estopped from claiming the contract continued for a period of 12 months.
On August 30, 2017, Benchmark filed a motion for summary judgment. It attached a memorandum in support of its motion; an affidavit of Marc Able, an officer and member of Benchmark, who entered into the Agreement with Smitty's Pizza; a copy of the Agreement; the listing of the property; and a screen shot of text messages with Shelly Stockton, the president of Smitty's Pizza.
On October 13, 2017, Smitty's Pizza filed an amending and supplemental answer. It stated that Benchmark never complied with its obligation under the Agreement and that Smitty's Pizza's statement about desiring to retain the business did not preclude Benchmark from finding a buyer of the business for $499,000 and earning its commission.
On November 17, 2017, Smitty's Pizza filed an opposition to the motion for summary judgment. It attached a memorandum, a copy of the Agreement, screen shots of text messages between Mr. Able and Ms. Stockton and portions of the depositions of Mr. Able and Ms. Stockton. In a November 29, 2016 text message, Mr. Able told Ms. Stockton, "I'm not going to ask that you honor the contract i just don't want to waste anymore time talking to people if you really don't want to sell." In a February 13, 2017 text message, Ms. Stockton told Mr. Able, "I know you're going to think I'm crazy, but after this weekend I've decided I'm going to keep the place for a while." Ms. Stockton sent this text message eight days before the Agreement's 12-month term expired. Smitty's Pizza contended that Ms. Stockton was relying on Mr. Able's November 29 text message when she made this statement. It noted that Benchmark never procured a qualified buyer for Smitty's Pizza and that there is nothing in the Agreement stating that Benchmark gets anything if it is unable to sell the business at a price not asked for or agreed upon by Smitty's Pizza. Smitty's Pizza argued that genuine issues of material fact existed as to the issue of an enforceable contract.
On November 21, 2017, Benchmark filed a reply memorandum in support of its motion for summary judgment. It stated that Smitty's Pizza's sole defense to its refusal to honor the Agreement is a text message by Mr. Able to Ms. Stockton that he was not going to ask her to honor the Agreement. Benchmark noted that Ms. Stockton responded to this text message by refusing to accept the offer to let Smitty's Pizza out of the Agreement and instead responded, "No. I know the contract *1150 I signed with you is for a year [.]"[1] Benchmark stated that it continued to market the property and attempt to sell it from November 2016 until February 2017 when Ms. Stockton unilaterally decided to withdraw it from the market before the 12-month period expired. Benchmark noted that in Ms. Stockton's deposition she agreed that the Agreement states that no material modification shall be valid or binding unless made in writing and signed by both parties and that there was no such document signed by the parties.
A hearing on the motion for summary judgment was held on December 11, 2017. The district court determined that the text messages between the parties were not writings signed by both parties; and, therefore, the parties did not modify the Agreement. Following the hearing, it filed a judgment granting the motion for summary judgment in favor of Benchmark and against Smitty's Pizza in the sum of $49,900 plus attorney fees of $7,500 and all costs of the proceedings.
Smitty's Pizza appeals.
DISCUSSION
Summary Judgment
Smitty's Pizza presents four assignments of error in support of its fifth assignment of error, in which it argues that the district court erred in granting summary judgment on the evidence submitted. Benchmark argues the judgment was correct.
Appellate courts review motions for summary judgment de novo , using the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Milazzo v. Harvey , 51,653 (La. App. 2 Cir. 1/10/18), 245 So.3d 346, citing Peironnet v. Matador Res. Co. , 12-2292 (La. 6/28/13), 144 So.3d 791.
A motion for summary judgment shall be granted if the motion, memorandum and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success or determines the outcome of the legal dispute. Jackson v. City of New Orleans , 12-2742 (La. 1/28/14), 144 So.3d 876. A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. Id. , citing Smitko v. Gulf S. Shrimp, Inc. , 11-2566 (La. 7/2/12), 94 So.3d 750. In determining whether an issue is genuine, a court should not consider the merits, make credibility determinations, evaluate testimony or weigh evidence. Milazzo v. Harvey , supra , citing Chanler v. Jamestown Ins. Co. , 51,320 (La. App. 2 Cir. 5/17/17), 223 So.3d 614, writ denied , 17-01251 (La. 10/27/17), 228 So.3d 1230.
Modification of the Agreement
In its first assignment of error, Smitty's Pizza argues that the district court erred in failing to acknowledge that parties can orally and by mutual actions modify a written contract even if the contract provides that all modifications be in writing and signed by all parties. It contends that Mr. Able's text message stating, "I'm not going to ask that you honor the contract [.]" was *1151 not an offer to let Smitty's Pizza out of the Agreement, but was, instead, a termination of the Agreement by Mr. Able. It argues that by their conduct after this termination, the parties modified the Agreement to be if Mr. Able could find a buyer at the purchase price of $499,000, then Ms. Stockton would pay him the 10 percent commission.
Benchmark argues that there was no oral modification of the Agreement. It emphasizes that the Agreement cannot be modified except in writing signed by both parties, which was not done. It agrees that a written contract may be orally modified, but it contends that Smitty's Pizza did not meet the burden of proving that a modification occurred.
Contracts have the effect of law for the parties. La. C.C. art. 1983. A contract is formed by the consent of the parties established through offer and acceptance. La. C.C. art. 1927. Unless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing or by action or inaction that under the circumstances is clearly indicative of consent. Id. Unless otherwise specified in the offer, there need not be conformity between the manner in which the offer is made and the manner in which the acceptance is made. Id.
The law is clear that written contracts may be modified by oral contracts and the conduct of the parties. Grosjean v. Grosjean , 45,529 (La. App. 2 Cir. 10/13/10), 50 So.3d 233, writ denied , 10-2619 (La. 2/4/11), 56 So.3d 980, and writ denied , 10-2623 (La. 2/4/11), 57 So.3d 311. A party who asserts that an obligation has been modified must prove the facts or acts giving rise to the modification. La. C.C. art. 1831.
Smitty's Pizza contends that the text messages between the parties demonstrate a modification of the Agreement. Both parties provided screen shots of portions of their text message exchange. A compilation of these screen shots provides the following exchange: On November 29, 2016, Mr. Able sent a text message to Ms. Stockton, which stated, "Hello Shelly. Have you withdrawn your business for sale?" Ms. Stockton replied, "No. I know the contract I signed with you is for a year. I've just been busy with other things and the restaurant has been doing good. Tell me again what you need to date to be able to discuss with prospective buyers." Mr. Able responded, "2015 tax return and most recent profit and loss statement. I'm not going to ask that you honor the contract i just don't want to waste anymore time talking to people if you really don't want to sell." Ms. Stockton did not respond. On December 8, 2016, Mr. Able texted to Ms. Stockton, "Shelly??" The next text messages between the parties that are in the record occurred in February 2017. Mr. Able asked Ms. Stockton, "Any luck with the P & L?" She responded, "I just sent CPA a follow up ... She said she believes she has everything and will look at when she gets to office in morning. I'll let you know as soon as I hear from her." He replied, "Thanks." Several days later on February 13, 2017, Mr. Able asked, "Any word??" Ms. Stockton responded, "I know you're going to think I'm crazy, but after this weekend I've decided I'm going to keep the place for a while. Thank you for everything you've done and I apologize." Mr. Able replied, "You know Shelly I have many hours of work promoting this and have spoken with many people. Many hours have been spent working on selling your restaurant." Then on March 2, 2017, Mr. Able stated, "I have a qualified buyer willing to offer you $450k for your place. Are you interested?" Ms. Stockton replied, "No thank you."
*1152 Although Smitty's Pizza is correct that a written contract may be modified orally and by the conduct of the parties, it has not proven that such a modification occurred in this case. It has not provided evidence of any oral conversations or agreements between the parties. It also has not proven that the parties modified the Agreement by their conduct. The text messages between the parties demonstrate that they did not agree to modify the contract. Although Mr. Able offered Ms. Stockton the opportunity not to honor the Agreement, she did not accept this offer. The parties' conduct then continued under the terms of the Agreement, e.g., they continued to discuss the finances of Smitty's Pizza and Benchmark continued to market the property, until their text message exchange on February 13, 2017, when Ms. Stockton withdrew the property from sale.
Text Messages
In its second assignment of error, Smitty's Pizza argues that the district court erred in finding that text messages between the parties are not writings and signed by both parties. It contends that the text messages between Mr. Able and Ms. Stockton were writings as defined by the Code of Evidence and in criminal jurisprudence and that they were signed by both parties in that the names of Mr. Able and Ms. Stockton are identifiable.
Benchmark argues that a text message is not a writing signed by both parties.
La. C.E. art. 1001(1) defines "writings" as follows:
"Writings" and "recordings" consist of letters, words, numbers, sounds, or their equivalent, set down by handwriting, typewriting, printing, photostating, photographing, magnetic impulse, mechanical or electronic recording, or other form of data compilation.
Paragraph 18 of the Agreement provides, in part, that "No amendment, material modification or extension of this Agreement shall be valid or binding unless made in writing and signed by both Seller and an Officer of the Broker." Although a text message might be a writing as contemplated by the La. C.E. art. 1101, neither Louisiana legislation nor Louisiana jurisprudence supports Smitty's Pizza's contention that the text messages exchanged between the parties were "made in writing and signed" by the parties as to constitute an amendment or modification to the Agreement. Even if the text messages were made in writing and signed by the parties, the parties did not agree to amend or modify the Agreement in their text message exchange.
Construing of Provisions of the Agreement
In its third and fourth assignments of error, Smitty's Pizza argues that the district court erred in failing to construe provisions of the Agreement against Benchmark as the furnisher of the text of the Agreement. It contends that the provision in the Agreement requiring a writing signed by both parties to modify the Agreement was fulfilled by the text messages; and, therefore, Benchmark released it from the Agreement by text message. It alleges that it was Ms. Stockton's reasonable understanding that the Agreement had been terminated or, at least, that Mr. Able had waived the right to enforce it as it was originally written because of his text message that stated that he would not ask her to honor the Agreement.
Benchmark argues that Smitty's Pizza's claim that the district court erred in failing to properly construe contract provisions is without merit. It contends that Smitty's Pizza was not released from the Agreement. It states that the Agreement is not ambiguous; and, therefore, there is nothing to construe against Benchmark. It contends *1153 that Smitty's Pizza's argument that Benchmark waived the right to the enforcement of the Agreement is without legal authority.
When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art. 2046. In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text. La. C.C. art. 2056. A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party. Id.
Although Smitty's Pizza relies on La. C.C. art. 2056 to support its contention that the Agreement should be interpreted in its favor and against Benchmark, this article is not applicable to this case. La. C.C. art. 2056 is applicable when the language of a contract is ambiguous. The words of the Agreement in this case are clear and explicit. Specifically, Paragraph 18, which requires any amendments or modifications to be made in writing and signed by the parties, is clear and explicit. This provision is not ambiguous; and, therefore, it will not be construed against Benchmark.
The district court did not err in granting Benchmark's motion for summary judgment. The motion, memorandum and supporting documents show that there are no genuine issues as to material fact-the parties entered into the Agreement, the parties did not modify or amend the Agreement and Smitty's Pizza withdrew the property from sale before the 12-month term expired. Therefore, Benchmark was entitled to judgment as a matter of law.
Accordingly, these assignments of error lack merit.
Monetary Awards
In its sixth assignment of error, Smitty's Pizza argues that the district court erred in awarding $49,900 based solely on the fact that it was 10 percent of the list price of an offer which was never produced by Mr. Able and that $7,500 in attorney fees is unreasonable and was not based on any evidence. It contends that there is nothing in the Agreement stating that Benchmark receives a commission if it is unable to sell the business at a price not asked for or agreed upon by Ms. Stockton. It notes that Mr. Able never procured a qualified buyer for Smitty's Pizza at Ms. Stockton's $499,000 asking price.
Benchmark argues that the amount of the judgment based upon the asking price was correct. It notes that the terms of the Agreement provided that a 10 percent commission shall be based upon the asking price. It states that Smitty's Pizza's argument that no buyer was located is irrelevant because Smitty's Pizza withdrew the business from sale during the 12-month period. Benchmark also argues that the award of attorney fees was reasonable.
The Agreement provides, in pertinent part:
2. The purchase price for the Business shall include all cash or non-cash consideration, received by the Seller including, but not limited to, cash equivalents, notes, liabilities assumed, earn outs, licensing fees, non-compete and consulting agreements. Seller agrees to pay Broker at closing a fee as follows: 10% of the purchase price.
3. Seller agrees that if this listing is cancelled or the property withdrawn from sale during the listing term by Seller, the commission (based on the asking price) shall become immediately due by Seller to Broker. If Seller refuses or is unable to comply with the *1154 listing terms for any reason, thereby preventing disposition of the property during the listing term upon the terms set forth above, the commission (based on the asking price) shall become immediately due by the Seller to the Broker.
* * *
8. This Agreement shall commence on the day and year set forth below and continue for a period of twelve (12) months.
9. Should any suit be commenced to enforce the Broker's rights herein, the prevailing party agrees the other party shall pay the expenses connected therewith, including attorney's fees incurred.
Shelly Stockton signed the Agreement on February 21, 2016. She withdrew the property from sale on February 13, 2017, i.e., during the 12-month listing term. Therefore, Paragraph 3 of the Agreement applies, and the commission of 10 percent of the asking price was immediately due by Smitty's Pizza to Benchmark. The listing price of $499,000 is evidenced in the record by a copy of the listing of the property on a website for selling businesses. Therefore, the district court did not err in awarding Benchmark $49,900.
An appellate court reviews an award of attorney fees for an abuse of discretion. Volentine v. Raeford Farms of La., LLC , 50,698 (La. App. 2 Cir. 8/15/16), 201 So.3d 325, writ denied , 16-1924 (La. 12/16/16), 212 So.3d 1171, and writ denied , 16-1925 (La. 12/16/16), 212 So.3d 1171, citing Covington v. McNeese State Univ. , 12-2182 (La. 5/7/13), 118 So.3d 343. A reasonable attorney fee is determined by the facts of an individual case. Cupit v. Hernandez , 45,670 (La. App. 2 Cir. 9/29/10), 48 So.3d 1114, writ denied , 10-2466 (La. 12/17/10), 51 So.3d 7. The trial court has discretion to determine the amount of an attorney fee based upon the court's own knowledge, the evidence and the court's observation of the case and the record. Id. A court does not have to hear evidence concerning time spent or hourly rates charged in order to make an award because the record will reflect much of the services rendered. Id.
Based upon the facts of this case, the district court did not abuse its discretion in awarding attorney fees of $7,500. Paragraph 9 of the Agreement provides for the awarding of attorney fees. The transcript of the hearing on the motion for summary judgment demonstrates that the parties and the district court discussed the award of attorney fees off the record before the district court awarded fees. The district court noted that the amount of the award included additional collection that may be necessary by Benchmark's attorney.
Accordingly, this assignment of error lacks merit.
Benchmark's Request to Increase Attorney Fees
Benchmark argues that Smitty's Pizza's appeal is a frivolous appeal and requests that the award of attorney fees be increased on appeal due to additional fees and costs incurred.
La. C.C.P. art. 2164 states:
The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages, including attorney fees, for frivolous appeal or application for writs, and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable.
This provision is penal in nature and is to be strictly construed. Cox v. O'Brien , 49,278 (La. App. 2 Cir. 8/13/14), 147 So.3d 809, writ denied , *1155 14-1907 (La. 11/21/14), 160 So.3d 972. Appeals are always favored and, unless the appeal is unquestionably frivolous, damages will not be allowed. Id. Damages for frivolous appeal are only allowed when it is obvious that the appeal was taken solely for delay, that the appeal fails to raise a serious legal question or that counsel is not sincere in the view of the law he advocates, even though the court is of the opinion that such view is not meritorious. Id. The award of damages and attorney fees for a frivolous appeal are utilized to curtail the filing of appeals that are intended to delay litigation, harass another party or those that have no reasonable basis in fact or law. Nesbitt v. Nesbitt , 46,514 (La. App. 2 Cir. 9/21/11), 79 So.3d 347, writ denied , 11-2301 (La. 12/2/11), 76 So.3d 1178.
After a review of the record, we do not consider Smitty's Pizza's appeal to be frivolous. It does not appear that Smitty's Pizza appealed for the purpose of delaying litigation or to harass another party. This appeal has a reasonable basis in fact and law. Therefore, we decline to award Benchmark's request for additional attorney fees.
CONCLUSION
For the foregoing reasons, we affirm the district court's granting of summary judgment in favor of Plaintiff-Appellee Victus 1, Inc., d/b/a Benchmark Business Brokers, and against Defendant-Appellant Stocky's World Famous Pizza # 14, Inc., d/b/a Smitty's Pizza. Costs of this appeal are assessed to Defendant-Appellant Stocky's World Famous Pizza # 14, Inc., d/b/a Smitty's Pizza.
AFFIRMED.

Benchmark's description of the order of these text messages is mistaken. Screen shots of the text messages provided in the record show that Mr. Able first asked Ms. Stockton if she had withdrawn her business from sale, she responded that she had not and knew the Agreement was for a year and Mr. Able then responded that he would not ask her to honor the contract. Ms. Stockton did not respond to this text message.