Judgment rendered March 1, 2022

No. 54,617-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

MICHAEL M. SELLAR                           Plaintiff-Appellee

versus

DONALD "DON" NANCE, ET AL.                  Defendants-Appellants

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2022-0302

Honorable Alvin R Sharp, Judge

* * * * *

PELICAN LAW, LLC                      Counsel for Appellant,
By: Jacob D. Rennick                  Donald "Don" Nance

NEWMAN, OLIVEAUX & MAGEE, LLP         Counsel for Appellee,
By: Todd G. Newman                    Michael M. Sellar

* * * * *

Before MOORE, STONE, and COX, JJ.

**COX, J.**

This suit involves the disqualification of a candidate for the seat of Mayor of the City of West Monroe on grounds that the candidate was not a qualified elector and did not meet the residency requirement for the office. Appellant, Donald "Don" Nance ("Nance"), appeals the ruling of the trial court disqualifying his candidacy in the March 26, 2022, election. Appellee, Michael M. Sellar ("Sellar"), has answered the appeal, seeking frivolous appeal damages. For the following reasons, we affirm the trial court's judgment and deny the Appellee's request for frivolous appeal damages.

## FACTS

On January 26, 2022, Nance filed a notice of candidacy for Mayor of the City of West Monroe in which he listed his address as 2510 North 10th Street, within the City of West Monroe in Precinct 37. It is undisputed that at the time of his qualification, Nance was also registered to vote at the North 10th Street residence, while maintaining his homestead exemption at a second residence he owned on 103 Love Street, in the unincorporated area of Ouachita Parish and outside of the city limits of the City of West Monroe in Precinct 32.

On January 31, 2022, in accordance with La. R.S. 14:1401, Sellar, a qualified voter, filed a petition to object to the candidacy of Nance. Sellar alleged that Nance was not a qualified elector of the City of West Monroe and had not been a resident of the city for one year prior to his qualification. The basis of Sellar's first claim related to the two residences that Nance owned. Sellar argued that statutory law mandated registered voters to vote only in the precinct where a homestead exemption was claimed, and that in his notice of candidacy Nance falsely swore under oath that he was

registered to vote in the precinct where he claimed a homestead exemption. Sellar also alleged that Nance had never previously voted in an election in the City of West Monroe. For these reasons, Sellar argued that Nance was not a qualified elector in the City of West Monroe. Sellar also argued that Nance and his wife actually resided at the Love Street address since 2011 and purchased the North 10th Street residence in August 2020, but did not live there. Thus, Sellar challenged Nance's residency in the City of West Monroe at the time he qualified to run for mayor.

Nance answered the petition and asserted that he established his residence at the North 10th Street location in late October or early November 2020, when he moved into the home at that location with the intent to remain there indefinitely. Nance also argued that his maintenance of a homestead exemption on the Love Street residence was not a factor in determining his qualification as a mayoral candidate or in proving actual physical residence.

The matter was tried on February 5 and 6, 2022. Sellar presented the testimony of seven witnesses, and introduced 29 exhibits into evidence. The Ouachita Parish Registrar of Voters confirmed that Nance registered to vote at the North 10th Street residence in Precinct 37 on July 21, 2021, and was formerly registered at the Love Street residence in Precinct 32 since 2012. Nance's July 21, 2021, voter registration application, which was signed by him, was admitted into evidence. Paragraph 3 of this form required the applicant to list their residence address and clearly instructed that this address "must be address where you claim homestead exemption." The Ouachita Parish Tax Assessor affirmed that Nance claimed his homestead exemption on the Love Street residence in March 2011, and that it had not

2

changed. This property included a 2517 square-foot home. The Tax Assessor also testified that Nance acquired the North 10th Street property on August 11, 2020, but that all communications from the tax assessor's office to Nance were mailed to the Love Street address. This property included an 896 square-foot residence. The Director of Finance and City Clerk for the City of West Monroe testified and identified the majority of exhibits introduced into evidence by Sellar to support his claims. These exhibits included documentation showing that in 2021, Nance utilized his Love Street address on items such as his utilities customer account card, tax documents from 2020 and 2021, 2020 and 2021 permit applications, occupational license applications, garbage and sewer records, medical insurance, a 2021 workers' compensation claim, and utility billing. Documentation also showed that Nance did not obtain garbage service for the North 10th Street address until April 13, 2021, and then changed his address for that service as well as his water service to the North 10th Street address. Exhibits showed that Nance changed his utility account for the North 10th Street address from Don Nance Properties (Nance's rental business) to Don Nance on July 19, 2021.

Sellar presented testimony and introduced evidence regarding water usage at both the North 10th Street and Love Street residences. Sellar introduced various graph depictions of daily and monthly water usage at the North 10th Street residence from October 2020 through January 2022, which reflected sporadic and inconsistent water usage at that location during 2021. With the stipulation of Nance, Sellar introduced into evidence the Greater Ouachita Water Company records of the Love Street address from June 2020 through the date of trial. These documents show consistent water usage at

3

the Love Street home. An employee of the West Monroe Code Enforcement testified that in late October 2020, she noticed daily water usage at the North 10th Street property when no account had been activated and contacted Nance about it. At that time, Nance told the witness that his son-in-law and daughter were living at the North 10th Street property. The witness's notes regarding this event were introduced into evidence.

Dana Benson, the Ouachita Parish Clerk of Court, was called to testify on behalf of Sellar. She identified a January 18, 2022, cash deed involving Nance, who listed his home address as the Love Street address. Benson identified a second cash sale deed of August 11, 2020, in which Nance listed his address as the Love Street residence. Benson identified an "assumed name certificate," dated September 23, 2020, which also reflected the Love Street residence as Nance's address. These exhibits were introduced into evidence.

Benson identified a blank candidacy form like the one Nance approved to qualify for candidacy. Benson testified that a candidate fills out the form and brings it to her office where "they do their attestation to the fact that it's true and correct." On the record, Benson read item number 8 from the form whereby a candidate attested to the fact that if a homestead exemption was claimed on a residence, the candidate was "registered and voted in the precinct in which the residence is located," unless residing in a nursing or veterans' home. Benson testified that she personally saw Nance sign a candidacy form and identified his name on the bottom of Nance's actual form. Benson did not ask Nance any questions about his homestead exemption, but "printed the form out then we handed it to him to look at and to verify that it was correct and then we did the attestation." Benson stated

4

that Nance signed it, she notarized it, and "had two witnesses and handed him back a copy." Benson stated that Section 14 of the form stated that "all the statements contained herein are true and correct." Benson identified a copy of a photograph of Nance "doing his attestation." During that event, Benson asked Nance to swear that the contents of the candidacy form were true and correct to the best of his ability, knowledge, and belief. These exhibits were also introduced into evidence.

Nance testified on his behalf, stating that he purchased the North 10th Street property in August 2020 and moved into the house in late October or early November 2020. He testified that he owned the Love Street residence for 11 years and admitted that he "still" claimed his homestead exemption on the Love Street house. Nance testified that he claimed North 10th Street as his primary residence although he listed the Love Street location as one of his residences. Nance explained that he did not have garbage service at the North 10th Street address when he first obtained the property because he carried the trash in his truck to a cigar business he owned nearby. With regard to the lack of use of electricity at that location, Nance explained that he spent "a lot of time at the cigar shop." Nance stated that his wife, daughter, son-in-law, and two grandchildren live with him at the North 10th Street residence, even though it is much smaller than the Love Street residence. Nance further explained that he did not change his drivers' license to reflect the North 10th Street residence in July 2021, because he was a very busy individual. Nance stated that "the lady at the driver's license" office asked him if he wanted to change his voter registration, and he agreed to do so. Nance testified that he still got mail at the Love Street

address because he is there often and his two daughters live there. Nance had a vintage vehicle he stored in the garage of the Love Street address.

Nance explained that he talked about his candidacy with the clerk of court about a year prior to his qualifying. At that time, he had no understanding "that the homestead exemption would be an issue."

On cross-examination, Nance identified his qualification form and admitted that he signed it. Nance read "number eight in that list," on the record. Nance testified that he believed the form said "homestead exemption or a residence," and again admitted that the North 10th Street address was not where he claimed his homestead exemption. Nance conceded that the photograph identified by Benson depicted his "swearing in." Nance admitted that on March 25, 2021, he was fired from his job with the City of West Monroe, and "signed up for garbage" at the North 10th Street address on April 13, 2021. Nance explained that he moved his residence from the Love Street address to the North 10th Street address to be closer to his cigar business. Nance opened an account for water service there on November 23, 2020, under the name Don Nance Properties.

Nance also admitted that in April 2021, he changed the name on his water account at the North 10th Street residence from Don Nance Properties (his rental company) to Don Nance. Nance conceded that he did not change his mailing address with the "City" from his Love Street address, the vehicle he drove was registered at the Love Street address, and his municipal retirement information was sent to the Love Street address.

Nance was questioned about sporadic and inconsistent water usage at the North 10th Street residence during March-July 2021. He challenged the

accuracy of the water bills, pointing out discrepancies that showed gallons of water used, but inconsistently reflected no water usage.

The trial court questioned Nance about his homestead exemption. Nance once again admitted to the court that he claimed his homestead exemption at the Love Street address.

After the presentation of evidence and testimony, the trial court ordered "one shot briefs," due and returnable on February 9, 2022. On February 9, 2022, Nance filed a peremptory exception of no cause of action, not at issue in this appeal, which the trial court denied on February 10, 2022. It was not until February 19, 2022, that the trial court rendered judgment disqualifying Nance as a candidate for the office of Mayor of West Monroe. In its written reasons for judgment, issued on February 18, 2022, the trial court determined that Nance did not possess the qualifications for the office of mayor of West Monroe because he was not a qualified elector. The trial court concluded that Nance "put forth a false/defective '*Notice of Candidacy Form*,'" because he claimed a homestead exemption on property located outside of the city limits (Precinct 32), but registered to vote using the address of a home located within the city limits (Precinct 37). After rejection of Nance's testimony, the trial court found that Nance failed to prove that he resided within the city limits of West Monroe for one year prior to qualifying as a candidate for mayor.

Nance has appealed. This appeal was lodged with this Court on February 24, 2022.[1] This matter has been resolved by this Court in strict compliance with the time constraints set forth in La. R.S. 18:1409.

---

[1] With his motion for appeal, Nance also filed a motion to dismiss the judgment on grounds that the trial court failed to timely rule in this matter in direct violation of La.

7

# LAW

Because election laws must be interpreted to give the electorate the widest possible choice of candidates, a person objecting to candidacy bears the burden of proving that the candidate is disqualified. *Landiak v. Richmond,* 05-0758 (La. 3/24/05), 899 So. 2d 535; *Russell v. Goldsby,* 00-2595 (La. 9/22/00), 780 So. 2d 1048. Once the party bearing the burden of proof in an objection to candidacy case has established a *prima facie* case that the candidate is disqualified, the burden shifts to the party opposing the disqualification to rebut the showing. *Sealy v. Brown*, 53,541 (La. App. 2 Cir. 2/4/20), 291 So. 3d 290, *writ denied*, 20-00226 (La. 2/7/20), 292 So. 3d 60.

A court determining whether the person objecting to candidacy has carried his burden of proof must liberally construe the laws governing the conduct of elections so as to promote rather than defeat candidacy. Any doubt concerning the qualifications of a candidate should be resolved in favor of allowing the candidate to run for public office. *Landiak v. Richmond, supra*.

Article III, Section 303 of the Charter of City of West Monroe specifically provides for the qualification of mayor for that city as follows:

> The mayor shall be a qualified elector of the city and shall hold no other public office for which he shall be entitled to receive any remuneration or per diem compensation, except that of notary public or membership in the national guard or reserve defense establishment. The mayor must be twenty-one (21) years of age and shall have been a resident of the city for one (1) year and a resident of Ouachita Parish for at least two (2) years. The mayor shall not have been convicted of a felony.

R. S. 18:1409. The trial court denied this motion at the same time he granted Nance's appeal. We note that La. R.S. 18:1409(C) requires the trial court to "render judgment within twenty-four hours after the case is submitted to him and shall indicate the date and time rendered on the judgment."

Any mayor, ceasing to possess these qualifications, or who is convicted of a felony shall immediately become disqualified, creating a vacancy in the office. [2]

A candidate shall possess the qualifications for the office he seeks at the time he qualified for that office. La. R.S. 18:451.

A candidate sets out his qualifications in the initial filing of notice of candidacy under La. R.S. 18:461. *Kelley v. Desmarteau*, 50,552 (La. App. 2 Cir. 9/28/15), 184 So. 3d 55. The purpose of the notice of candidacy is to provide sufficient information to show a candidate is qualified to run for the office he seeks. *Percle v. Taylor*, 20-244 (La. App. 5 Cir. 8/5/20), 301 So. 3d 1219, *writ denied*, 20-00983 (La. 8/10/20), 300 So. 3d 878; *Trosclair v. Joseph,* 14-675 (La. App. 5 Cir. 9/9/14), 150 So. 3d 315, *writs not cons.*, 14-1909 (La. 9/12/14), 148 So. 3d 572 and 14-1920 (La. 9/12/14), 148 So. 3d 937.

La. R.S. 18:463(A)(2) sets forth the requirements for a notice of candidacy, in relevant part, as follows:

> (2)(a) The notice of candidacy also shall include a certificate, signed by the candidate, certifying all of the following:
> . . . .
>
> (i) That he has read the notice of his candidacy.
>
> (ii) That he meets the qualifications of the office for which he is qualifying.
> . . . .
>
> (viii) Except for a candidate for United States senator or representative in congress or a candidate who resides in a nursing home as defined in R.S. 40:2009.2 or in a veterans' home operated by the state or federal government, that if he claims a homestead exemption on a residence pursuant to Article VII, Section 20 of the Constitution of Louisiana, he is

---

[2] At trial, the parties stipulated to and admitted into the record the contents of this provision.

9

registered and votes in the precinct in which that residence is located.

(ix) That all of the statements contained in it are true and correct.

Consistently, La. R.S. 18:101(B) provides regarding the homestead exemption and voter registration, in relevant part, as follows:

For purposes of the laws governing voter registration and voting, "resident" means a citizen who resides in this state and in the parish, municipality, if any, and precinct in which he offers to register and vote, with an intention to reside there indefinitely. If a citizen resides at more than one place in the state with an intention to reside there indefinitely, he may register and vote only at one of the places at which he resides. If a person claims a homestead exemption, pursuant to Article VII, Section 20 of the Constitution of Louisiana, on one of the residences, he shall register and vote in the precinct in which that residence is located, except that a person who resides in a nursing home as defined in R.S. 40:2009.2 or in a veterans' home operated by the state or federal government may register and vote at the address where the nursing home or veterans' home is located.

An action objecting to the candidacy of a person who qualified as a candidate in a primary election shall be based on specific grounds which may include that the defendant does not meet the qualifications for the office he seeks in the primary election under La. R.S. 18:492.

La. R.S. 18:492(A) states, in relevant part:

A. An action objecting to the candidacy of a person who qualified as a candidate in a primary election shall be based on one or more of the following grounds:

(1) The defendant failed to qualify for the primary election in the manner prescribed by law.
. . . .

(3) The defendant does not meet the qualifications for the office he seeks in the primary election.

In *Percle v. Taylor, supra,* the Fifth Circuit Court of Appeal held that the filing of a false certification in a notice of candidacy with respect to the homestead exemption relates to the failure to qualify in the manner

10

prescribed by law in La. R.S. 18:492(A)(1), because the "manner for qualifying" includes "the filing of an accurate notice of candidacy under oath, accompanied by the qualifying fee." The court found that because the candidate's certification by affidavit constitutes substantive and/or material information, any inaccuracies or falsities made by the candidate regarding this information is grounds for disqualification under La. R.S. 18:492(A)(1), because "what is at stake is no less than the integrity of the process of qualifying for public office." *Id.* In *Trosclair v. Joseph, supra*, the Fifth Circuit held that the notice of candidacy must be free from errors when considering the issue of whether a candidate could be disqualified for inaccuracies in her party affiliation, even when the candidate attempted to remedy the issues after the suit to disqualify was filed.[3] *See also*, *Senegal v. Obafunwa*, 99-1449 (La. App. 3 Cir. 9/27/99), 745 So. 2d 74; *Madden v. Edwards*, 436 So. 2d 759 (La. App. 1 Cir. 1983), *writ denied*, 437 So. 2d 287 (La. 1983).

When the qualifications for an office include a residency or domicile requirement, a candidate shall meet the established length of residency or domicile. La. R.S. 1:3; *Landiak v. Richmond*, *supra*; *State v. Wilson*, 53,262 (La. App. 2 Cir. 8/27/19), 278 So. 3d 1081, *writ not cons.*, 19-01396 (La. 8/30/19), 277 So. 3d 1185, *recon. denied*, 19-01396 (La. 8/31/19), 277 So. 3d 1186.

---

[3] However, the Fourth Circuit Court of Appeal has held that "falsely swearing to anything other than those specific provisions enumerated in [La. R.S. 18:492] is not a basis for disqualification." *Kiefer v. Lombard*, 21-0453 (La. App. 4 Cir. 7/30/21), *writ denied*, 21-01125 (La. 8/6/21), 322 So. 3d 784, in which Justice Crain voted to grant the writ to resolve the conflict in the circuits concerning the proper interpretation of La. R.S. 18:492(A).

It has long been held that the terms "residence" and "domicile" are legal terms that are not synonymous. *Landiak v. Richmond, supra*; *State v. Wilson*, *supra*. A person can have two residences, but only one domicile. La. C.C. art. 39. A person may maintain more than one residence and the fact that one is maintained for political purposes does not itself prevent the residence from being actual and bona fide. Intent to maintain a residence is an important factor, but intent alone does not establish a bona fide residence. There must be actual, physical use or occupation of quarters for living purposes before residence is established. *Sealy v. Brown*, *supra*; *McClendon v. Bel*, 00-2011 (La. App. 1 Cir. 9/7/00), 797 So. 2d 700; *Walsh v. Rogillio*, 00-1995 (La. App. 1 Cir. 9/7/00), 768 So. 2d 653, *writ denied*, 00-2610 (La. 9/12/00), 766 So. 2d 1288. Some of the types of documentary evidence commonly considered by courts to determine domicile in fact include such things as voter registration, homestead exemptions, vehicle registration records, driver's license address, statements in notarial acts, and evidence that most of the person's property is housed at that location. *Sealy v. Brown, supra*. Water usage is also a valid consideration. *Id*. There is no minimal duration period required for the establishment of such a residence. The intent to establish a residence, coupled with physical actions denoting the acquisition of a residence, is sufficient. *Sealy v. Brown, supra; Walsh v. Rogillio*, *supra; Butler v. Cantrell*, 630 So. 2d 852 (La. App. 4 Cir. 1993), *writ denied*, 631 So. 2d 431 (La. 1994). Domicile and residency, for purposes of an election contest, present issues of fact. The standard of review of findings of fact by the trial court is the clearly wrong or manifest error standard. *Sealy v. Brown, supra.*

## DISCUSSION

On appeal, Nance first seeks dismissal of the judgment at issue based upon the trial court's failure to render judgment within 24 hours after the case was submitted, in accordance with La. R.S. 18:1409. Nance summarily argues that he "should be permitted to run for mayoral office." Nance contends that the trial court erred in concluding that he was not a qualified elector on the day he qualified for candidacy and in finding that he did not meet the residency requirement.[4]

We find Nance's request for dismissal of the trial court's ruling to have no merit. Recently, in addressing a similar complaint by the appellant in *Sealy v. Brown*, *supra*, this Court held that errors or failures of the trial court causing delays in proceedings in an election suit are not attributable or imputable to a plaintiff when the parties suffer no prejudice. Here, the untimeliness of the ruling was solely caused by the trial court's delay. Other than the anticipation attendant to waiting for the trial court to rule, Nance has suffered no prejudice by the delayed ruling as he is being afforded full appellate review in this matter. We find that in these circumstances, dismissal of the ruling is not warranted.

Regarding the issue of Nance's status as a qualified elector, the record before this Court indisputably establishes that Nance maintained his homestead exemption on his Love Street residence at the time of qualifying. La. R.S. 18:101 clearly mandates that an individual with more than one residence is required to register to vote at the residence where the homestead

---

[4] Notably, in his brief, Nance concedes that "out of an abundance of caution," he "changed his homestead exemption," to his North 10th Street residence inside the city limits of West Monroe on February 7, 2022.

exemption is claimed. It is also undisputed that in his January 26, 2022, "Notice of Candidacy Form," Nance attested to the fact that his North 10th Street residence was where he claimed his homestead exemption.[5] Nance's voter registration application also shows that he was aware of the homestead exemption residence requirement. The trial court found the false certification disqualified Nance from candidacy under La. R.S. 18:492. Considering the integrity necessary to the process of qualifying for public office, we agree with the Fifth Circuit's reasoning and analysis in *Percle v. Taylor, supra*. The manner of qualifying in La. R.S. 18:461 is by filing an accurate notice of candidacy, under oath. We agree with our colleagues of the Fifth Circuit that any information on the notice of candidacy required to be given by oath is substantive and/or material information and that "any inaccuracies, mistakes, or false statements" made under oath regarding this information are grounds for disqualification under La. R.S. 18:492(A), as a failure to qualify in the manner prescribed by law.

After full review of the evidence presented at the trial of this matter, we find no manifest error in the trial court's determination that Nance failed to satisfy the residency requirement. Sellar introduced significant documentary evidence to show that Nance continued to list his Love Street residence as his home address as recently as January 2022. Nance made public statements that his daughter and son-in-law were living at the North 10th Street residence in November 2020, did not begin garbage service at the

---

[5] This Court observes that Paragraph 8 of the "Notice of Residency Form" prepared by the Louisiana Secretary of State and signed by Nance, contains a typographical error. The form contains the word "or" between homestead exemption and residence. This is contrary to the language of La. R.S. 18:101, which includes the phrase "a homestead exemption on a residence." We find this to be an error of form and not substance as the intent of the language is clearly meant to track the statute. Correction of the form language should be undertaken by the Louisiana Secretary of State.

home until April 2021, and did not change his driver's license address to reflect the North 10th Street address until July 2021. Other objective evidence likewise supports the trial court's rejection of Nance's self-serving testimony. We find that the record before us fully supports the trial court's decision and affirm the trial court's judgment.

## APPELLEE'S ANSWER TO APPEAL

Contending that Nance's appeal serves only the purposes of vexation and delay and sets forth no serious argument to warrant reversal of the trial court's ruling, Sellar summarily seeks frivolous appeal damages "to compensate for the costs and fees associated with responding to the appellate proceedings in this matter."

An appellate court may render any judgment that is just, legal and proper on the record on appeal and may award damages for a frivolous appeal. La. C.C.P. art. 2164. This provision is penal in nature and is to be strictly construed. *Aymond v. Citizens Progressive Bank*, 52,623 (La. App. 2 Cir. 6/26/19), 277 So. 3d 477, *writ denied*, 19-1200 (La. 10/15/19), 280 So. 3d 602; *Victus 1, Inc. v. Stocky's World Famous Pizza #14, Inc.*, 52,221 (La. App. 2 Cir. 9/26/18), 256 So. 3d 1146. Damages for frivolous appeal are allowed only when it is obvious that the appeal was taken solely for delay, that the appeal fails to raise a serious legal question, or that counsel is not sincere in the view of the law he advocates, even though the court is of the opinion that such view is not meritorious. *Id.* The award of damages and attorney fees for a frivolous appeal are utilized to curtail the filing of appeals that are intended to delay litigation, harass another party, or those that have no reasonable basis in fact or law. *Id.* Appeals are always favored and, unless the appeal is unquestionably frivolous, damages will not be allowed.

15

*Aymond v. Citizens Progressive Bank*, *supra*. Any doubts regarding whether an appeal is frivolous must be resolved in the appellant's favor. *Wabnig v. Est. of Wabnig*, 20-0520 (La. App. 4 Cir. 4/21/21), 318 So. 3d 1094, *writ denied*, 21-00712 (La. 10/1/21), 324 So. 3d 1064. Although Nance was unsuccessful in proving his theory of the case, we cannot say that this appeal is frivolous. We deny Sellar's request for frivolous appeal damages.

## CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed. Sellar's request for frivolous appeal damages is denied. Costs of this appeal are assessed to Nance.

**AFFIRMED; FRIVOLOUS APPEAL DAMAGES DENIED.**