205 So.2d 213 (1967)
Stephen K. DALEY
v.
Ernest N. MORIAL.
No. 3036.
Court of Appeal of Louisiana, Fourth Circuit.
November 30, 1967.
Writ Refused December 4, 1967.
*214 James David McNeill, New Orleans, for plaintiff-appellant.
A. P. Tureaud, New Orleans, Earl J. Amedee, St. Elmo Johnson, Robert F. Collins, Nils R. Douglas, Lolis E. Elie, Freddie B. Warren, Jr., and Alvin B. Jones, New Orleans, for defendant-appellee.
Before REGAN, YARRUT, SAMUEL, CHASEZ, HALL, BARNETTE and JANVIER, JJ.
HALL, Judge.
Plaintiff, Stephen K. Daley, and defendant Ernest N. Morial, together with two others, were candidates in the Democratic Primary Election held on November 4, 1967 for election as the nominee of the Democratic Party for the office of Representative in the State Legislature from Representative District No. 20, composed of Wards 1 and 2 of the City of New Orleans. Following promulgation of the returns which revealed that Morial had a majority of the votes cast for said office, the Orleans Parish Democratic Executive Committee declared and certified him to be the Democratic nominee.
On November 10, 1967 Daley filed this suit alleging that Morial was not an actual resident of District 20 for two years immediately preceding the primary election held on November 4, 1967 and will not have been an actual bona fide resident of District 20 for two years at the time of the general election and consequently under the provisions of Article 3, Section 9 of the Constitution of Louisiana, he was and is completely ineligible as a candidate in the Democratic Primary for said nomination, and could not lawfully serve as such if he should be elected. Plaintiff prayed for judgment declaring Morial ineligible as a candidate in the Democratic Primary held on November 4, 1967 and declaring plaintiff to be the duly elected nominee of the Democratic Party for said office of Representative since plaintiff received "a majority of the votes cast for the eligible candidates for said office." Petitioner prayed in the alternative that since plaintiff did not receive a majority of the total votes cast in said primary election for said office that a second primary be ordered held between himself and the next highest candidate, Joeseph R. Marullo, and in the further alternative plaintiff prayed that the said election be declared null and void and that a new primary election be held.
Exceptions to the jurisdiction of the court, of no cause nor right of action and a plea of estoppel filed by the defendant were referred to the merits, and after trial on the merits the District Judge rendered judgment *215 overruling the exceptions and the plea of estoppel and rendered a separate judgment on the merits dismissing plaintiff's suit at his cost. Plaintiff appealed.
The first question presented for our determination is whether the courts have the authority or right to question the qualification of defendant, Morial, to hold the office of Representative in view of Article III, Section 10 of the Constitution, which provides in part:
"Section 10. Each house shall be the judge of the qualifications, election and returns of its own members * * *"
Obviously this article applies only to those who have been elected as members of the Legislature and not to one who is only a political party nominee. The decision of the Supreme Court in State ex rel. O'Donnell v. Houston, 40 La.Ann. 598, 4 So. 482 (1888) cited by counsel for defendant, and as well as its decision in the earlier case of State ex rel. Redon v. Spearing, 31 La. Ann. 122 (1879), were suits contesting the qualifications of persons who had been elected to membership in the Legislature and the Court held that it had no jurisdiction to hear and determine such matters in view of an altogether similar provision in the Constitution then in effect. In the unreported case of Douglas v. Cucullu, No. 9564 of the Orleans Parish Court of Appeal, decided March 24, 1924 the Court said:
"A contest for nomination under Act 97 of 1922, known as the Primary Law, arising between contestants for nomination for election to the State Legislature, is in no sense an election contest within the purview of Article III, Sec. 10 of the Constitution of Louisiana, which provides that each house of the State Legislature shall be the judge of the qualifications and election and returns of its own members. This constitutional provision is not well pleaded in support of an exception ratione materiae, urged by the contestee, against the jurisdiction of the Parish District Court, where contestation proceedings are brought in compliance with Sec. 27 of the primary law."
Before considering the merits of this case it might be well to observe that the only remedy available to plaintiff as of the date the suit was filed was his alternative prayer for annulment of the election. (See O'Keefe v. Burke, 226 La. 1039, 78 So.2d 165).
Article III, Section 9 of the Constitution sets forth the qualifications for membership in the House of Representatives as follows:
"Section 9. Every elector under this Constitution shall be eligible to a seat in the House of Representatives * * * provided, that no person shall be eligible to the Legislature unless at the time of his election he has been a citizen of the State for five years, and an actual resident of the district or parish or ward of the parish of Orleans for which he may be elected for two years immediately preceding his, election * * *" (emphasis supplied)
The only objection to defendant's qualifications made by plaintiff is that defendant had not been an actual bona fide resident of Representative District No. 20 of the City of New Orleans for two years at the time of the primary election held on November 4, 1967 and that he will not have had an actual residence in that district for two years immediately preceding the general election to be held on February 6, 1968. Plaintiff contends that during the two year period in question defendant's actual residence was at 5752 Press Drive which is not within the boundaries of Representative District No. 20 and that in attempting to qualify himself as a candidate in the primary election defendant falsely represented himself to be an actual resident of 1242 Magazine Street, which is located in Ward 2, District 20. Defendant contends that although he maintains a residence at 5752 Press Drive he also maintains a residence at 1242 Magazine Street and that he has actually resided at the latter place for more than two years immediately preceding the primary election.
*216 The Trial Judge in his written "Reasons for Judgment" held in part as follows:
"The Court finds as a fact that the defendant, Ernest N. Morial, in the year 1964, deliberately established an actual bona fide residence at 1242 Magazine Street for the purpose of being a candidate for the Louisiana House of Representatives in the Democratic Primary of November 1967.
"The Court is of the opinion that the law of Louisiana gives every citizen the right to do what defendant did in this case.
"The Court is of the further opinion that the record in this case shows that the defendant met all of the requirements of the law * * *"
The record reveals that defendant is married and the father of four minor children, and is not separated from his wife. He is an attorney and from 1965 until shortly before he qualified to run for the House of Representatives was an Assistant United States Attorney in New Orleans.
In 1961 he purchased the property at 5752 Press Drive and moved there with his family. He still owns and maintains this residence which is not within the boundaries of Representative District No. 20. In January 1964 defendant purchased the two-story building bearing the municipal number 1242 Magazine Street, which is located in Ward 2 of the City of New Orleans and within Representative District No. 20. At the time defendant purchased 1242 Magazine Street the front portion of the lower floor was occupied by a barber shop, but following a fire which occurred in the barber shop sometime in 1964 defendant remodelled the building converting it into an upper and lower residential apartment building.
According to defendant's testimony he bought new furniture in the fall of 1964 and completely furnished the lower apartment, and moved into it in December 1964. On December 10, 1964 he changed his voting registration from 5752 Press Drive to 1242 Magazine Street. His wife did likewise. He has voted in Precinct 1 of Ward 2 in every election held since then.
Defendant testified that he established a residence at 1242 Magazine Street for the purpose of having a town house for the accommodation of his wife and himself when they went out for dinner or attended the theatre "so we didn't have to return to the suburbs at night," and for the additional purpose of establishing a legal domicile there because he intended to run for office. Defendant testified that he and his wife went out very often and on such occasions they left the children with their in-laws at 5752 Press Drive and slept at 1242 Magazine Street; that on other occasions he and his wife slept there just to be alone. He testified that he has slept at 1242 Magazine Street three or four nights a week since December 1964 and that since December 1964 his wife has lived at the Magazine Street address approximately 40% of the time.
Harry Connick, an Assistant United States Attorney and former president of the New Orleans Criminal Court Bar Association, testified that he had visited defendant at 1242 Magazine Street on two occasions and on both occasions defendant's wife was there with one or more of her children. He described the apartment and stated that it was completely furnished with the usual type of apartment furnishings.
Roland Dixon who resides in the upper apartment at 1242 Magazine Street testified that he had seen defendant at his apartment on numerous occasions over a period of three years and that defendant lives at 1242 Magazine Street "downstairs from where I live." Dixon identified pictures taken of the rooms in the lower apartment, showing the furnishings.
Mrs. Marion Bell who resides at 1239 Magazine Street, across the street from 1242 Magazine Street testified that she had seen defendant entering and leaving his apartment over a period that covered several years.
*217 Dr. Wellington Arnaud, a dentist, testified that he had visited defendant's residence at 1242 Magazine Street on numerous occasions over the past three years and that he has seen defendant's wife and children at the residence on Magazine Street. He further testified that on many occasions he has driven defendant to 1242 Magazine Street at night, and that on some occasions he has picked him up there early in the morning. He also stated that defendant's residence at 1242 Magazine Street was well furnished, including wall to wall carpeting.
Milton Lewis, a postman, testified that he has delivered mail, including certified mail, to defendant at 1242 Magazine Street since April 1965 when he was placed on this route.
Mrs. Nellie Mae Joiner, who resides at 1240 Magazine Street testified that she has seen defendant entering and leaving his residence at 1242 Magazine Street at various times of the day and night since early in 1965 when she moved into 1240 Magazine Street.
Daniel Price, a custodian of the Claver Building where defendant maintains one of his several law offices, testified that he had been cleaning defendant's apartment on Magazine Street regularly since the early part of February 1966 and that he had seen defendant's wife and children at the Magazine Street apartment every time he went there.
Reverend Harold Bethune, a minister, testified that he had visited defendant at 1242 Magazine Street frequently since March of 1965.
Plaintiff adduced the testimony of Estelle Ebanks, owner of a barroom at the corner of Magazine and Thalia Streets directly across the street from 1242 Magazine Street, and the testimony of Mrs. Maudie Adkins and Eugenie Frazer, employed as barmaids by Mrs. Ebanks, all of whom testified that they had not seen defendant at 1242 Magazine Street except in recent weeks, although they would not say that he did not live there. Jake Cuccia who owns the property where Mrs. Ebanks has her barroom testified that he spends all of his time on the barroom corner and that he has never seen defendant in or around 1242 Magazine Street except once and that was during the political campaign. Mr. John Connolly of 1234 Magazine Street, Mr. Peter Matran, the Picayune delivery man in the area, and Edward Weichers, the rear of whose house abuts 1242 Magazine Street and whose bedroom window looks upon the yard at 1242 Magazine, all testified that they had never seen defendant at or around or near 1242 Magazine Street. Mr. John Connolly is a clerk in the office of Mr. Thomas Buckley, Clerk of the Civil District Court, and stated that he had a Daley sign on his house. Mr. Weichers was a candidate for re-election as a member of the Democratic State Central Committee and testified on cross-examination that he had been forced into a second primary by a candidate running on Morial's ticket and that he had been supported by Daley.
Plaintiff lays great stress on the fact that defendant still maintains a residence at 5752 Press Drive and on certain documentary evidence relative to the gas and electric service at that place and at 1242 Magazine Street. According to his calculation the bills of New Orleans Public Service Inc. show that the average electric usage at 1242 Magazine Street for the period from January 1966 through October 1967 is 54 kilowatts per month as against an average of 809 kilowatts per month at 5752 Press Drive, and that no gas at all was used at 1242 Magazine Street prior to December 1966.
Plaintiff also produced evidence to show that in April 1964 defendant applied for homestead exemption at 5752 Press Drive; that in January 1965 defendant filed an application with the United States Department of Justice for employment as Assistant United States Attorney giving his residence as 5752 Press Drive and that no change of address was ever given the United States Attorney's office. He also produced evidence *218 to show that in May 1965 a residential telephone was installed at 1242 Magazine Street in the name of Ernest N. Morial and on May 16, 1965 he requested his residence phone at 5752 Press Drive to be unlisted and on June 30, 1967 an extension was installed on the telephone at 1242 Magazine Street so that an incoming call would ring at both 1242 Magazine Street and 5752 Press Drive. Plaintiff further showed that defendant was given two traffic tickets on July 8, 1966 and one on November 1, 1966 and another on May 27, 1967 and that each shows plaintiff's address as 5752 Press Drive.
It was stipulated that the Post Office records would show that no change of address was ever given for Ernest N. Morial from 5752 Press Drive.
We are unable to hold that the mere fact no gas was consumed at 1242 Magazine Street during the year 1966 is conclusive of the fact that defendant did not live there during that time. The record does not reveal whether he used gas or electricity for heating and cooking. (cf. Melerine v. Democratic Parish Executive Committee, 164 La. 855, 114 So. 711).
We are of the opinion that the most that can be said for all of plaintiff's documentary evidence is that it shows that plaintiff has two residences, one on Press Drive and one on Magazine Street, a fact which Morial freely admitted. This is clearly permitted under our law. (See Stavis v. Engler, 202 So.2d 672).
Clearly defendant had the intention of establishing a residence at 1242 Magazine Street. His motives for so doing are immaterial except insofar as they might tend to show that the residence was not bona fide. We know of no jurisprudence to the effect that business or other necessity is a sine qua non for the establishment of a second residence.
The Trial Court evidently believed Morial's testimony and so believing held that Morial was a bona fide resident of Ward 2 of the City of New Orleans. We find no manifest error in that holding. We are of the opinion, based on the record as presented to us, that Morial is a duly qualified elector of Precinct 1 of Ward 2 and that he has been an actual resident of Representative District No. 20 of the City of New Orleans for more than two years preceding the date of the election.
Being under a statutory duty to decide the issues presented by this appeal within 24 hours after submission we have been unable to attempt a full discussion of the jurisprudence relevant thereto.
For the foregoing reasons the judgment appealed from is affirmed; costs of this appeal to be borne by plaintiff-appellant.
Affirmed.
JANVIER, Judge (dissenting).
I respectfully dissent, being of the opinion that the facts of this case did not show that relator established a bona fide residence in the district in which he attempted to qualify.