339 So.2d 474 (1976)
A. W. WILLIAMSON, Plaintiff-Appellee,
v.
VILLAGE OF BASKIN et al., Defendants-Appellants.
No. 13022.
Court of Appeal of Louisiana, Second Circuit.
November 1, 1976.
Rehearing Denied December 6, 1976.
Writ Refused February 11, 1977.
John Barkley Knight, Jr., Winnsboro, for defendants-appellants.
Jerry A. Kirby, Monroe, for plaintiff-appellee.
Before BOLIN, PRICE and HALL, JJ.
En Banc. Rehearing Denied December 6, 1976.
HALL, Judge.
At issue on this appeal is the legality of the action of the Mayor and Board of Aldermen of the Villege of Baskin (1) declaring the office of Marshal or Chief of Police[1] of the Village vacant on the grounds that the elected Chief of Police, plaintiff herein, moved his residence outside the Village limits and (2) appointing a new Chief of Police. The district court held the action invalid for the reasons that the Village is not authorized *475 by law to declare the office vacant, the action was taken without notice, and plaintiff was, in fact, a resident of the Village. Judgment was rendered ordering reinstatement of the elected Chief of Police with full back pay and removal of the appointed Chief of Police. The Village, its Mayor and Aldermen and the appointed Chief appealed. We affirm, but for reasons other than those given by the district court in its written reasons for judgment.
Plaintiff, A. W. Williamson, was elected Chief of Police in March, 1973. At that time he lived with his family behind a furniture store which he was operating in Baskin. In October, 1973, he closed the store and moved his family, furniture and possessions to a home he owned about a mile outside of Baskin. For the purpose of attempting to maintain his status as a resident of Baskin, plaintiff "rented" a room in the Mayor's trailer home for awhile, and then "rented" a room in the home of a friend. He paid no rent, except maybe a dollar a year, and never spent the night or any other significant time in the rented rooms.
At a special meeting held July 24, 1975, the Board of Aldermen adopted a resolution declaring the office of Chief of Police vacant by reason of the fact that Williamson had moved his residence to a place outside the territorial jurisdiction of the Village of Baskin. No notice was given to Williamson of the meeting and he had no knowledge of the action until advised by letter mailed the next day. A few days later defendant, Herman E. Tubberville, was appointed Chief of Police at a meeting of the Mayor and Board of Aldermen. A commission was issued to Tubberville by the Secretary of State and he took the oath of office and commenced his duties on August 4, 1975.
On September 8, 1975, plaintiff filed suit against the Village, its Mayor and Aldermen, and Tubberville, seeking a mandatory injunction and, alternatively, writs of mandamus and quo warranto, praying for reinstatement, back pay, removal of Tubberville from the office, an increase in pay, and attorney's fees.
The defendants filed answers and reconventional demands alleging the legality of the action of the Mayor and Board of Aldermen and seeking dismissal of plaintiff's suit. Alternatively, in the event of a holding that the action of the Mayor and Board of Aldermen was not properly taken, defendants prayed for a declaratory judgment declaring the office vacant because of plaintiff's nonresidence. The Village and its officers also filed a peremptory exception of no cause of action and no right of action claiming that title to public office cannot be litigated by injunction or mandamus where the claimant is not in possession of the office.
Williamson filed an exception of no cause or right of action to the reconventional demands contending a declaratory judgment proceeding is not a proper action to remove a public official from office.
In this posture the case went to trial. In written reasons for judgment, the trial court held (1) Williamson was illegally deposed because the Mayor and Board of Aldermen are not authorized by law to declare an office vacant and because the action was taken without notice to plaintiff or an opportunity to be heard; (2) plaintiff intended to maintain a residence in Baskin and intention being the principal consideration, there were no grounds for declaring the office vacated on the grounds of nonresidence; (3) plaintiff was not entitled to an increase in compensation; and (4) plaintiff was not entitled to attorney's fees. Judgment was rendered accordingly.
Numerous issues are raised on appeal by the parties, including (1) whether plaintiff was a resident of the Village after October, 1973 and at the time the removal action was taken; (2) the authority of the Mayor and Board of Aldermen to declare the office of Chief of Police vacant; (3) whether notice or an opportunity to be heard is required prior to taking such action; and (4) whether the actions filed by the parties are the proper procedural vehicles to determine the issues raised.
Dealing first with the issue of whether plaintiff changed his residence *476 from within to without the Village limits, we conclude the trial court erred in holding that plaintiff maintained a residence within the Village limits. Plaintiff moved his family and possessions to his home outside of the Village and lived there from and after October, 1973. He "rented" the rooms in the Village for the admitted purpose of attempting to comply with the residence requirement of the law. He never spent any appreciable time in the rooms, never spent the night there, never even took a nap there, and never in any sense actually used the rooms as a place to live, even part time or occasionally. There is no evidence that his move to his former home outside of the Village was temporary or that he intended in the future to reestablish any sort of abode in Baskin.
A person may maintain more than one residence and the fact that one is maintained for political purposes does not itself prevent the residence from being actual and bona fide. Intent to maintain a residence is an important factor, but intent alone does not establish a bona fide residence. There must be actual, physical use or occupation of quarters for living purposes before residence is established. There was no such use or occupation in this case.
Plaintiff relies on Stavis v. Engle, 202 So.2d 672 (La.App. 4th Cir. 1967) and Daley v. Morial, 205 So.2d 213 (La.App. 4th Cir. 1967). These cases are not at all similar factually to the instant case. In Daley, a dual residence was maintained for several years and the candidate stayed at the second residence, often with his family, three or four nights each week. In Stavis, the candidate for years maintained living quarters above his restaurant and bar, which was open twenty-four hours a day seven days a week. He slept in the upstairs quarters about five nights a week and slept at his other residence, where his wife and children lived, about two nights each week.
The facts of the instant case are closer to, but weaker than, those in McIntire v. Carpenter, 202 So.2d 297 (La.App. 4th Cir. 1967), in which the candidate was held not to be a resident of Jefferson Parish. The candidate had an office in Jefferson Parish and spent one or two nights a week there, sleeping on a small cot in the office. He spent the other nights of the week at the apartment in New Orleans which he owned and where his wife lived.
Under the uncontroverted facts established by stipulation and testimony in this case, plaintiff changed his residence from within to without the limits of Baskin in October, 1973, and did not thereafter retain residence in Baskin.
Cutting through the other issues presented, this court holds, however, that the action by the Mayor and Board of Aldermen of the Village in declaring the office of Chief of Police vacant was without legal basis because at the time the action was taken there was no requirement in the law that the Chief of Police be a resident of the Village.
Art. VIII, § 13 of the Louisiana Constitution of 1921 provided:
"No person shall be eligible to any office, State, district, parochial, municipal or ward, who is not a citizen of this State and a duly qualified elector of the State, district, parish, municipality or ward, wherein the functions of said office are to be performed. And whenever any officer, State, district, parochial, municipal or ward, may change his residence from this State, or from the district, parish, municipality or ward, in which he holds such office, the same shall thereby be vacated, any declaration of retention of domicile to the contrary notwithstanding; provided further, that this article shall not apply to superintendents of public schools."
The provisions of Art. VIII, § 13 were not retained in the 1974 Constitution nor were they carried forward as statutory law. Under the express provisions of Art. XIV, § 17 of the Louisiana Constitution of 1974, the provisions referred to were repealed. After the effective date of the 1974 Constitution, midnight December 31, 1974, there is no constitutional requirement that a municipal officeholder be a resident of or a duly qualified elector of the municipality wherein the functions of the office are to be performed.
*477 There is likewise no statutory requirement that the Chief of Police of a municipality governed under the Lawrason Act (LSA-R.S. 33:321 et seq.) be a resident or qualified elector of the municipality he serves. LSA-R.S. 33:384 provides that the Mayor shall be a qualified elector of the municipality and a resident of the parish for two years. LSA-R.S. 33:385 provides the same qualifications for Aldermen. No such requirement or qualification exists in the statutory law for the office of Chief of Police.
In March, 1973, when plaintiff was elected Chief of Police there was a constitutional requirement that he be a duly qualified elector of the municipality and one of the requirements of being a qualified elector under Art. VIII, § 1 of the 1921 Constitution was that the person be "an actual bona fide resident" of the municipality. In October, 1973, when plaintiff moved outside the Village territorial limits, there was in effect the 1921 Constitutional residence requirement and provision that upon change of residence from the municipality by a municipal officer the office shall be vacated. In July, 1975, when the Mayor and Board of Aldermen declared the office vacant there was no constitutional or statutory residence requirement.
Defendants urge that the action of the Mayor and Board of Aldermen was legally justified because when plaintiff changed his residence in October, 1973, the 1921 Constitutional provisions were in effect, the office was ipso facto vacated, and the fact that plaintiff illegally remained in office until July, 1975 and the fact of the adoption of the 1974 Constitution did not alter the legal consequences of his change of residence in 1973. Defendants refer to Art. XIV, § 26 of the 1974 Constitution which provides:
"Except as otherwise specifically provided in this constitution, this constitution shall not be retroactive and shall not create any right or liability which did not exist under the Constitution of 1921 based upon actions or matters occurring prior to the effective date of this constitution."
After plaintiff changed his residence in 1973, the office could have been declared vacant and plaintiff removed from office by appropriate authority and proceedings. This did not happen and plaintiff continued to hold the office and exercise the powers and duties thereof. We do not believe Art. VIII, § 13 of the 1921 Constitution meant that an office is ipso facto, automatically vacated by change of residence of the officeholder.
The fact of change of residence may ipso facto, automatically give grounds for having an office declared vacated and the officer removed, but it cannot be said that the office is vacated until such is declared by a court or other authorized official or governing body. Until the fact of plaintiff's change of residence was duly established and the office declared vacant, plaintiff was entitled to remain in his elected office. Such was his status at the time the 1974 Constitution went into effect and the repeal of the residence requirement did not create any right in plaintiff not existing at the time or based on matters occurring prior to the effective date of the Constitution.
Our holding does not apply the provisions of the 1974 Constitution retroactively, but to the contrary applies the law as it existed when the Mayor and Board of Aldermen attempted to remove plaintiff to the facts that existed at that time. The repealing clause of the 1974 Constitution makes it clear that 1921 Constitution provisions not carried forward in the new Constitution or as statutory law should not determine the rights of persons after the effective date of the new Constitution.
Pertinent here are the transitional provisions of the 1974 Constitution contained in Art. XIV, § 15, which provide in part:
"A person holding an office by election shall continue to exercise his powers and duties until his office is abolished, his successor takes office or the office is vacated, as provided by law." (Emphasis supplied)
Plaintiff, in every meaningful sense, was "holding an office by election" on December *478 31, 1974, when the 1974 Constitution went into effect. He was drawing the salary of the Chief of Police, and he was performing the duties of the Chief of Police. Therefore, under Art. XIV, § 15, he is to continue to hold office until the office is thereafter vacated, as provided by law.
This holding is consistent with the definition of vacancy contained in Art. X, § 28 of the 1974 Constitution:
"A vacancy, as used in this Constitution, shall occur in the event of death, resignation, removal by any means, or failure to take office for any reason."
The phrase "removal by any means" contemplates removal of the officeholder by lawful means before a vacancy can be said to exist.
Defendants cite State ex rel. Boone v. Ammons, 47 So.2d 370 (La.App. 2d Cir. 1950). In that case brought by the District Attorney under the Intrusion into Office statute (now LSA-R.S. 42:76, et seq.) the court found the officeholder had, in fact, changed his residence and the court declared the office vacated. Thus, the office was vacated by appropriate authoritythe court in a proceeding properly brought.
At the time the 1974 Constitution became effective the office of Chief of Police had not been vacated nor plaintiff removed therefrom. The constitutional residence requirement was repealed. At the time the Mayor and Board of Aldermen declared the office vacant, residence in the Village was not a qualification of the office and change of residence from the Village was not a legal basis for declaring the office vacated. The action of the Mayor and Board of Aldermen was illegal and null and void.
On the procedural issues, there are at least two recognized procedures for trying the right of a public official to his office. One is provided by LSA-R.S. 42:76 entitled "Actions to try right to office", which provides for the action to be brought by the attorney general or district attorney. The other is a quo warranto proceeding authorized by LSA-C.C.P. Arts. 3901 and 3902. In the instant case plaintiff proceeded by petition for mandatory injunction and, alternatively, for writs of mandamus and quo warranto against the municipal corporation, its governing body, and the adverse claimant to the office. The proceeding was proper to raise the issues of entitlement to office and power of the governing body, and the judgment rendered was in accordance with the relief authorized by LSA-C.C.P. Art. 3902.
Resolution of the appeal for the reasons stated makes it unnecessary to consider the remaining issues posed on appeal.
For the reasons assigned, the judgment of the district court is affirmed, at the cost of defendants-appellants.
Affirmed.
NOTES
[1] Prior to 1970, LSA-R.S. 33:381 provided for a "marshal" as one of the officers of a municipality governed by a Mayor and Board of Aldermen. Act 594 of 1970 changed the title of the office to "Chief of Police." The word "marshal" still is used in several other sections of Title 33. The office will be referred to as "Chief of Police" in this opinion.