# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 22-517

**AL PERRY THOMAS**

**VERSUS**

**NEAL LARTIGUE ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTEENTH JUDICIAL DISTRICT COURT
PARISH OF EVANGELINE, NO. 80,126-B
CHUCK R. WEST, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## VAN H. KYZAR
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of D. Kent Savoie, Van H. Kyzar, and Candyce G. Perret, Judges.

**REVERSED AND RENDERED.**

**Anne E. Watson**
**Law Office of Anne E. Watson, LLC**
**232 N. Liberty Street**
**Opelousas, LA 70570**
**(337) 942-9790**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
**Al Perry Thomas**

**Jonathan C. Vidrine**
**Jonathan C. Vidrine Law Firm**
**510 W. Magnolia Street**
**Ville Platte, LA 70586**
**(337) 363-2772**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**Neal Lartigue**

**KYZAR, Judge.**

The plaintiff, Al Perry Thomas, appeals the judgment of the trial court denying his petition objecting to the candidacy of the defendant, Neal Lartigue, for the office of Chief of Police for the City of Ville Platte. For the reasons herein assigned, we reverse and render.

## FACTS AND PROCEDURAL HISTORY

On July 22, 2022, Mr. Thomas (Plaintiff) filed, in the Thirteenth Judicial District Court, Evangeline Parish, a petition seeking to disqualify Mr. Lartigue (Defendant) as a candidate for the office of Chief of Police for the City of Ville Platte. Defendant filed to qualify for office on July 21, 2022, within the qualifying period for the November 8, 2022 election. The petition alleged that Defendant lacked the qualifications for the office in that he was not domiciled within the electoral voting district at the address listed in his qualifying documents, 801 N. Chataignier Street, Ville Platte, Louisiana, but instead was domiciled outside the city limits of Ville Platte, at 1600 L'Anse De Cavalier, Ville Platte, Louisiana, and had been so domiciled for the preceding year. The petition further alleged that the house located at 801 N. Chataignier Street (the Chataignier address) had been owned by the Evangeline Parish Police Jury since September 9, 2020,[1] and was uninhabitable. Plaintiff sought to have Defendant disqualified as a candidate for Chief of Police of Ville Platte, as he was not domiciled within the city.

A trial in this matter was heard on August 3, 2022. Plaintiff offered numerous exhibits and witnesses, including himself and Defendant. While Plaintiff is an elector in the city of Ville Platte, he is also a candidate for Chief of Police in the same election. In addition to his testimony, he called several other witnesses,

---

[1] Although the tax sale occurred on September 2, 2020, the tax deed was actually recorded on September 9, 2020.

including the President of the Evangeline Parish Police Jury, Defendant's ex-wife, a paralegal, the City Clerk for the City of Ville Platte, and the Chief Deputy Tax Assessor for Evangeline Parish. At the close of Plaintiff's case, Defendant, through his counsel, moved for a directed verdict, which the trial court denied. In addition to his own testimony, Defendant called two additional witnesses and introduced additional documentary evidence. Thereafter, the trial court rendered judgment in favor of Defendant, dismissing Plaintiff's petition to disqualify him from seeking the office. In oral reasons for judgment, the trial court stated as follows:

> Alright, then I'm going to rule. Cleveland v. Williams 148 So. 3rd 229, 2nd Circuit Court of Appeals, is a close case. In that case, the court looked at a situation very similar, in fact Mr. Williams was domiciled outside the time [sic] limits of Delhi. He wanted to run for Chief of Police, he moved into the uh -- the us [sic] the Town of Delhi, he secured a residence in the town, he didn't own it, he didn't even rent it. He was living there, the testimony was that the uh the guy that owned it was letting him live because he was making repairs. Utility records demonstrated sporadic usages. He wife I think even testified in there that they had lived outside of Delhi for 20 years; uh the usage -- Williams at that time uh changed his address, postal, voter, school registration, and he gave up the homestead exemption at this home. The court said these are all relevant elements in determining domicile. Uh, especially documentary evidence. They ruled in favor. The 2nd Circuit upheld his qualification. I've looked at the two Supreme Court cases Becker versus Dean, that's 450[] -- uh 854 So.2d 864; that's Louisiana Supreme Court, the instructions are simple, in election contest the person opposing the candidacy bears the burden of proof providing [sic] that the candidate is disqualified, that's on you. Then the interest of the State and [its] citizens are best served when election law are [sic] interpreted so as to give the electorate the widest possible choice of candidates. Where a particular domicile is required of a candidacy the burden of proof rest upon the party objecting to get -- objecting to the candidacy to show a lack of domicile and he's [sic] where I have a problem because I do have a doubt as to whether or not that place is livable, but the Supreme Court in Becker says any doubt as to the qualifications of a candidate should be resolved in favor of allowing the candidate to run for public office. I believe that quite frankly, there is documentary evidence that shows he resided there, the testimony has been at odds, I believe quite frankly, all of these people are good people, I believe their testimony, I believe the law is clear that uh there a -- that domicile requires an actual residence with an intent to reside and some physical use or occupation. I wouldn't live there. I think that the place is the [sic] decrepit, but he explained he's working on it trying to go [sic]. It's been 16 years that he's been claiming that's his domicile. Ms.

2

Lartigue participated in that until the divorce. There's contradictory evidence one way or the other. There's documentary evidence both ways. Since the burden is on the person challenging it to prove it I don't think that Mr. Thomas with the evidence has conclusively proved that he isn't domiciled there and quite frankly, I feel I am bounded by law to resolve this in Mr. Lartigue's favor because the law says doubt as to the qualifications of a candidate should be resolved. And like I said, I do have doubt as to that residency but the law says I do have to do it -- resolve it in his favor and allow the candidate to run because the State of Louisiana and our election laws favor given [sic] the elector the widest possible chose [sic] of candidacy. That's my ruling.

Formal judgment was signed that same day at 4:40 p.m. This appeal followed.

Herein, Plaintiff asserts three assignments of error, as follows:

1.  The trial court erred in dismissing Plaintiff's objection to Defendant's candidacy on the grounds that Defendant was not domiciled in the city limits of Ville Platte as required by La.R.S. 33:385.1(A).

2.  The trial court erred in relying exclusively on the case of *Cleveland v. Williams*, 49,664 (La.App. 2 Cir. 9/8/14), 148 So.3d 229, to find Defendant's domicile was 801 North Chataignier Street, Ville Platte, Louisiana, thereby disregarding all the evidence, including Defendant's own testimony that he lived/resided at the matrimonial domicile at 1600 L'Anse de Cavalier, which is outside the city limits of Ville Platte, for the year preceding his qualification for the office of Chief of Police.

3.  The trial court erred in finding that Defendant satisfied his burden of proof after finding that Plaintiff proved a prima facia case that Defendant was not domiciled within the city limits of Ville Platte.

## OPINION

This case involves a challenge to the qualifications of Defendant as a candidate for the office of Chief of Police for the City of Ville Platte, filed pursuant to La.R.S. 18:1401, et seq. In reviewing this election matter, we are mindful that our courts "have assiduously respected the principle that the law favors candidacy and must be liberally construed so as to promote rather than defeat candidacy." *Landiak v. Richmond*, 05-758, p. 1 (La. 3/24/05), 899 So.2d 535, 538.

3

"A person who desires to become a candidate in a primary election shall qualify as a candidate by timely filing notice of his candidacy," and when the office sought is a local or municipal one, the candidate shall qualify with the clerk of court in the parish in which the candidate is registered to vote. La.R.S. 18:461 and La.R.S. 18:462(B). "A notice of candidacy shall be in writing and shall state the candidate's name, the office he seeks, the address of his domicile, his telephone number, his electronic mail address if available, and the parish, ward, and precinct where he is registered to vote." La.R.S. 18:463(A)(1)(a). The notice of candidacy shall include a certificate signed before a notary public or two witnesses attesting to, among other requirements: that the candidate has read the notice of his candidacy; that he meets the qualifications for the office for which he is qualifying; that if he claims a homestead exemption on a residence, he is registered and votes in the precinct where his residence is located; and that all of the statements contained in the notice of candidacy are true and correct. La.R.S. 18:463(2)(i), (ii), (viii), and (ix).

"A registered voter may bring an action objecting to the candidacy of a person who qualified as a candidate in a primary election for an office for which the plaintiff is qualified to vote." La.R.S. 18:491(A). Such a challenge may be made when "[t]he defendant does not meet the qualifications for the office he seeks in the primary election." La.R.S. 18:492(A)(3).

Ville Platte is a Lawrason Act municipality pursuant to La.R.S. 33:321, et seq. "[A]n elected chief of police of a municipality shall be an elector of the municipality" and is required to "have been domiciled for at least the immediately preceding year in the municipality[,]" at the time of qualification for office. La.R.S. 33:385.1. "The domicile of a natural person is the place of his habitual residence." La.Civ.Code art. 38. "A natural person may reside in several places but may not have more than one domicile[,]" and "[i]n the absence of habitual residence, any place of residence may

4

be considered one's domicile at the option of persons whose interests are affected." La.Civ.Code art. 39.

Though not defined by statute, residency requires, "actual, physical use or occupation of quarters for living purposes before residence is established." *Williamson v. Village of Baskin*, 339 So.2d 474, 476 (La.App. 2 Cir. 1976), *writ denied*, 341 So.2d 1126 (La.1977). A person may reside in several places but may not have more than one domicile. *Gray v. Brown*, 53,265 (La.App. 2 Cir. 8/27/19), 278 So.3d 1104, *writ denied*, 19-140 (La. 8/31/19), 277 So.3d 1186. Whether one has established domicile and residence are issues of fact to be determined on a case-by-case basis. *Landiak*, 899 So.2d 535.

Questions of "[d]omicile and residency, for the purposes of an election contest, present issues of fact[,]" which are reviewed on appeal pursuant to the manifest error/clearly wrong standard. *Sellar v. Nance*, 54,617, p. 16 (La.App. 2 Cir. 3/1/22), 336 So.3d 103, 112. However, even considering the deference afforded to the trial court pursuant to the manifest error standard of review:

> [W]here documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination.

*Stobart v. State through Dep't of Transp. & Dev.*, 617 So.2d 880, 882 (La.1993) (citing *Rosell v. ESCO*, 549 So.2d 840, 844-45 (La.1989)).

> Because election laws must be interpreted to give the electorate the widest possible choice of candidates, a person objecting to candidacy bears the burden of proving that the candidate is disqualified. *See Becker v. Dean*, 03-2493, p. 7 (La.9/18/03), 854 So.2d 864, 869; *Russell v. Goldsby*, 00-2595, p. 4 (La.9/22/00), 780 So.2d 1048, 1051; *Dixon v. Hughes*, 587 So.2d 679, 680 (La.1991); *Messer v. London*, 438 So.2d 546 (La.1983). It follows that, when a particular domicile is required for candidacy, the burden of showing lack of domicile rests on the party objecting to the candidacy. *Becker*, 03-2493 at 7, 854 So.2d at 869; *Pattan v. Fields*, 95-2375 (La.9/28/95), 661 So.2d 1320. Further, a court determining whether the person objecting to candidacy has carried his burden of proof must liberally construe the laws governing

5

the conduct of elections "so as to promote rather than defeat candidacy." *Becker*, 03-2493 at 7, 854 So.2d at 869; *Russell*, 00-2595 at 4, 780 So.2d at 1051; *Dixon*, 587 So.2d at 680. Any doubt concerning the qualifications of a candidate should be resolved in favor of allowing the candidate to run for public office. *Becker*, 03-2493 at 7, 854 So.2d at 869; *Russell*, 00-2595 at 4, 780 So.2d at 1051; *Dixon*, 587 So.2d at 680.

. . . .

Generally, the legal term "burden of proof" "denotes the duty of establishing by a fair preponderance of the evidence the truth of the operative facts upon which the issue at hand is made to turn by substantive law." *Black's Law Dictionary* (8th ed). Under Louisiana's civil law, the "burden of proof" may shift back and forth between the parties as the trial progresses. Therefore, when the burden of proof has been specifically assigned to a particular party, that party must present sufficient evidence to establish the facts necessary to convince the trier of fact of the existence of the contested fact. Stated another way, the party on which the burden of proof rests must establish a *prima facie* case. If that party fails to carry his burden of proof, the opposing party is not required to present any countervailing evidence. On the other hand, once the party bearing the burden of proof has established a *prima facie* case, the burden then shifts to the opposing party to present sufficient evidence to overcome the other party's *prima facie* case. Louisiana courts commonly apply this "shifting burden of proof" in numerous specific instances, such as trial on motions for summary judgment and exceptions, and in workers' compensation cases.

*Landiak*, 899 So.2d at 541-42.

Here, Plaintiff initially had the burden of establishing a *prima facie* case that Defendant was not domiciled within Ville Platte's city limits. He presented the following evidence in support of his objection to Defendant's candidacy.

Fonda Lartigue, the former wife of Defendant, testified she and Defendant married in 1997, and initially lived at 1825 Meaghan Lane for two years, which was located outside of the Ville Platte city limits. She stated that they purchased a house and lot at 1601 L'Anse de Cavalier (the Cavalier address) in April 2000, which was also outside the city limits. Ms. Lartigue testified that she and Defendant separated in 2016, with her remaining at the Cavalier address. She stated that they reconciled in December 2017, whereupon Defendant moved back into the home at the Cavalier address. She said that she and Defendant lived together as husband and wife from

6

December 2017 through January 2021, when Defendant asked her to leave. Ms. Lartigue testified that the Cavalier address was their family home and matrimonial domicile up to that time. She stated that she moved out on February 2, 2021, and that Defendant remained in the home. She said that the divorce suit was filed in August or September 2021, and thereafter, she requested the exclusive use of the home. She stated that Defendant also requested the exclusive use of the home.

Ms. Lartigue testified that the divorce hearing was held on December 28, 2021, at the conclusion of which the trial court awarded both she and Defendant the joint use of the matrimonial domicile at the Cavalier address, with each party alternating sixty days of use. According to the trial court judgment, Defendant was awarded the first thirty-day period to allow him to remove any personal items, guns, ammunition, and clothing in the home. At the end of the thirty-day period, Ms. Lartigue was awarded use of the home for sixty days, with use then reverting to Defendant at the end of that sixty-day period, and so on. The trial court ruled that during both parties' period of non-use, they were "allowed the use of the alternative house located at 801 N. Chataignier Road, Ville Platte, Evangeline Parish, Louisiana, rent free," or they could procure their own housing.

Ms. Lartigue testified that she went to the house at the Chataignier address on April 1, 2022, and that she "unlocked the door, walked in it and turned around and walked out." She stated that she refused to stay at the house because it was uninhabitable. When asked to describe the house's condition, she stated:

Hum there's -- you can't even walk into the kitchen cause there are boxes and all kinds of empty whiskey and wine bottles and the stove is filthy and the living room is covered with a film of dust, the ceiling has a crack in it, the bedroom, the bed had rat feces in it. I didn't even go in the bathroom cause it was just horrible.

Ms. Lartigue testified that she saw four of Defendant's shirts at the Chataignier house April 1, 2022, but that they had been there since the last time she entered the

7

house in 2008. Other than that, she stated that she saw no other clothes or shoes in the house.

Ms. Lartigue stated that the last time she went to the Chataignier property was on August 2, 2022, the day before the trial. She described what she saw:

Q. [N]ow can you tell the court what did it look like yesterday when you went?

A. [I]t was the same condition maybe a little worse. There were -- it looked like there was no window pane [sic] over the kitchen sink and when I opened the refrigerator about 30 roaches jumped out. It was hot, but the light came on and there was like rat feces or something in that refrigerator covering everything.

Q. So did it look like anybody had lived there for a while?

A. No.

Q. So it was -- it was a little bit worse off than it was in February of '22?

A. Yes.

She stated that neither she nor Defendant owned or leased the property at the Chataignier address.

Alaina Vidrine, a legal secretary for Plaintiff's counsel, testified that she has been a resident of Ville Platte since 1992. She stated that as part of her job duties, she performs legal research and conducts record searches within Evangeline Parish. She said that in researching the courthouse records, she traced the ownership of the property at the Chataignier address back to 1950, when it was purchased by Freddie Malveaux and Octavie Malveaux, Defendant's mother. Ms. Vidrine testified that there were no further transfers of ownership until the property was adjudicated to the Evangeline Parish Police Jury (Police Jury) via a tax sale on September 2, 2020. She stated that according to her research, Defendant has never owned the property, nor has he owned any property located within the City of Ville Platte.

8

Ms. Vidrine testified that she took photographs of the exterior of the Chataignier property from the street on July 6 or 7, 2022, and then returned on July 27, 2022, for purposes of the election challenge. According to her testimony, she had permission to go on the property from Brian Vidrine, the Police Jury President, as the representative of the Police Jury, the record owner of the property. Ms. Vidrine testified that while on the property, she encountered Defendant, who, after blocking her vehicle from leaving the site, threatened to arrest her for trespassing if she did not leave. She said that he also called for back-up from other Ville Platte City Police officers. Ms. Vidrine testified that when Defendant refused to accept that the property belonged to the Police Jury, she contacted Mr. Vidrine and asked that he bring proof of the Police Jury's ownership to the property. She stated that after a police officer arrived at the scene, Defendant never allowed the officer to acknowledge or speak with Mr. Vidrine. Ms. Vidrine testified that she returned to the Chataignier address with Ms. Lartigue on August 2, 2022, and took photographs of the inside of the house. She described the dilapidated condition of house as similarly described by Ms. Lartigue.

Mr. Vidrine testified that he was familiar with the residence at the Chataignier address and the fact that an election challenge was made in 2018, based on an allegation that Defendant did not live at that address.[2] He stated the Chataignier address is approximately one mile from the Police Jury office and that he drives by that property two to three time per month. He said that he has never seen anyone living at that location nor has he seen any vehicles parked there. Mr. Vidrine testified that no one has lived at Chataignier address since the Police Jury acquired it in 2020,

---

[2] While we can find no record of a challenge in 2018, there is a reported case concerning a 2014 challenge, which dismissed the plaintiff's challenge on peremptive grounds without reaching the merits. *Fontenot v. Lartigue*, 14-1327 (La.App. 3 Cir. 12/30/14), 153 So.3d 1287.

nor has the Police Jury authorized anyone to live there. He described the condition of the home when he saw it on July 27, 2022, as follows:

> [T]he condition [sic] was in very bad condition. Hum, there was -- I think there was one window that was not busted. Hum, one side of the house that uh the cracks are probably about half inch. You can see inside the wall. Hum and the one window that you could look in hum there was what appeared to be a sheet of paneling that was laid on the floor and some insulation that was coming out of the wall.

Josh Fontenot, the Chief Deputy Tax Assessor for Evangeline Parish, testified that the Police Jury acquired the Chataignier property by tax sale deed dated September 9, 2020. According to the tax records, the property was shown to be owned by Freddie Malveaux but "in the care of" Neal Lartigue prior to the tax sale. The homestead exemption on that property, which had been maintained in the name of the deceased Mr. Malveaux many years after his death, was terminated on December 6, 2018, when parish authorities visited the property and determined that no one was living there. At that time, the parish dropped the assessed value of the property from $12,000.00 to $1,000.00 because of its dilapidated condition and removed the homestead exemption.

Hilda Edwards, City Clerk for the City of Ville Platte, testified that she had previously worked in Ville Platte's utility department. The trial court permitted her to testify as to the meaning of the utility bills, including water usage and its relation to the billing records for the Chataignier address. She testified that based on her review of the bills, there was no water consumption at the Chataignier address in the year preceding the July 20-22, 2022 qualification period and beyond. The billing records reflected water bills for a base rate only, but no consumption of water at that location.

Plaintiff testified that he is a resident and voter in the City of Ville Platte. He further admitted that he is also a candidate for the office of Chief of Police. On

10

Defendant's candidacy form, he listed the Chataignier address as his domicile. Mr. Thomas stated that he lives three blocks from this address and has rental property located four blocks from it. He further said that he passes the Chataignier address when traveling to various stores.

Mr. Thomas testified that he became aware of the Chataignier address in 2018, when Defendant's candidacy was challenged over whether he, in fact, lived at that address. Since then, he stated that he has seen no indicia that anyone lives there. He said that he has seen no persons there, no cars parked there, nor any lights on at night in the house. He stated that the property is in poor condition and does not appeared to be livable. When asked if there were any signs that the house had been lived in during the past two years, Mr. Thomas replied, "Absolutely not." He also noted that the house had several of its windows broken out. On cross examination, he admitted that he is currently employed as an over-the-road truck driver and that he has not gone by the house daily over the past several months.

Photographs introduced into evidence depicting the current condition of the house at the Chataignier address are very telling. Consistent with the testimony of Defendant's ex-wife and other witnesses, the residence is in a dilapidated and unsanitary condition, with roaches running out of the inoperable refrigerator, rodent droppings throughout the residence, including on the bedsheets, multiple broken windows, and the house was in a general state of serious disrepair. The trial judge candidly acknowledged that he would not live in the house.

Plaintiff introduced into evidence auto and homeowner insurance policies issued to Defendant by Louisiana Farm Bureau Mutual Insurance Company. The auto policy listed the Chataignier address as the garaging address for a 2003 Ford F250 Super Duty pickup truck, with an effective policy date of February 2 through August 27, 2022. It was also listed as the garaging address for a 2011 Honda

11

Odyssey van and a 1998 Chevrolet pickup truck, with an effective policy date for these vehicles of November 27, 2021 through May 27, 2022. Defendant's homeowner policy listed "1601 LANSE DE CAVALIER" as the "residence premises covered by this policy[.]" The effective date of this policy is October 18, 2021 through October 18, 2022. All of these dates are included within the year prior to the July 20-22, 2022 qualifying period for the November 8, 2022 election.

Plaintiff further introduced documentary evidence showing that Defendant listed the Cavalier address on his 2020 and 2021 tax returns or a post office box, but never the Chataignier address. In his detailed descriptive list from the divorce proceedings, Defendant listed all of his moveable property and personal effects as being located at the Cavalier property. In addition, the utility bills for the Chataignier address were billed to Defendant at his post office box address. These bills reflected very limited electrical usage at the address until usage increased during the June and July 2022 billing periods.

While the trial court denied a motion for a directed verdict at the close of Plaintiff's case-in-chief, reflecting that Plaintiff had, in fact, established a *prima facie* case, it did not then require the burden to shift to Defendant in order for him to overcome Plaintiff's *prima facie* case. This is reflected in the trial court's response to arguments of counsel post trial, wherein it stated to counsel for Plaintiff: "Actually, the law says [Defendant] don't have to prove his residence there. The law says your client has to prove he doesn't[,]" and then later, "No, you have to prove he don't." We find that this was an error of law, which interdicted the factfinding process. "Placing the burden of proof on the wrong party is a legal error that interdicts the fact-finding process because it casts a more onerous standard than the law requires on one of the parties." *Breaux v. Pickett*, 22-19, p. 2 (La.App. 3 Cir. 5/25/22), 340 So.3d 196, 198.

12

We further find that the trial court misapplied the law relative to one's domicile. This further interdicted the factfinding process. In its oral reasons, the trial court stated "that domicile requires an actual residence with an intent to reside and some physical use or occupation. I wouldn't live there. I think that the place is the [sic] decrepit, but he explained he's working on it trying to go [sic]." As set forth above, the domicile of a person is the place of his habitual residence. La.Civ.Code art. 38. Only in the absence of a habitual residence, may other residences be considered one's domicile. La.Civ.Code art. 39. Accordingly, we will now conduct a *de novo* review of this matter.

## *PROOF OF CHANGE OF DOMICILE*

We begin our analysis by considering the evidence presented by Plaintiff in an effort to carry his initial burden of establishing a *prima facie* case that Defendant was not domiciled within Ville Platte's city limits for at least one year immediately preceding his qualification to run as a candidate for office on July 22, 2022. La.R.S. 33:385.1(A).

Plaintiff claims that the overwhelming documentary and objective evidence presented at trial shows that for one year immediately preceding the July 20-22, 2022 qualifying for the November 8, 2022 election, Defendant's domicile, in fact, was at the Cavalier address. As he is attempting to prove that Defendant's domicile was changed from the Chataignier address, where he unquestionably lived at some point despite having no written ownership documentation nor any written lease or use authorization documentation, Plaintiff must overcome the presumption against change of domicile. He does this by presenting "positive and satisfactory proof of establishment of domicile as a matter of fact with the intention of remaining in the new place and of abandoning the former domicile," i.e., changing domicile from one place to another. *Becker v. Dean*, 03-2493, p. 7 (La. 9/18/03), 854 So.2d 864, 871;

13

*Russell v. Goldsby*, 00-2595, p. 4 (La. 9/22/00), 780 So.2d 1048, 1051. Based on the evidence, as discussed in depth in the previous section, we find that Plaintiff has clearly carried his burden of proving that Defendant was not qualified to run for the office of Chief of Police of Ville Platte during the November 8, 2022 election due to lack of domicile. Based on this finding, the burden shifts to Defendant to present countervailing evidence in order to overcome Plaintiff's *prima facie* case.

## COUNTERVAILING EVIDENCE

The record indicates that Defendant's voter registration reflects his address as being the Chataignier address, and he claims that this address is his domicile. Defendant's former matrimonial domicile, at the Cavalier address, is located outside the city limits of Ville Platte and, thus, outside the election district. Boiled down to its core, Defendant's primary defense in this case is that at no time did he intend to or did he actually change his domicile from the Chataignier address to the Cavalier address.

Gene Lavigne testified that although he is Defendant's cousin, he did not know where Defendant lived in Ville Platte. He further testified that he had not been to the Chataignier property between July 2021 and July 2022. He stated that he received permission from Defendant to park his boat at the Chataignier address approximately a year and a half prior to this trial. He said that when he arrived with his boat, Defendant was already in the back door of the house. He further stated that he had seen Defendant at the Cavalier address on Mother's Day, within a year prior to the trial.

Robert Soileau, Jr., a manager at First Student, a company for which Defendant drives a school bus, testified that he has been to the Chataignier address, where Defendant lives. However, he stated that he has only been in the house on one occasion prior to the Covid-19 event, when he helped Defendant install a

14

window unit in the house. He stated that he does not go inside the house because, unlike Defendant, he is a smoker. Mr. Soileau further testified that he met Defendant at the property approximately five times over the preceding year, "[m]ost of the time, like one time we went and then, went to the camp, the other times are just business, we just talk. Fix a ticket."

When asked about the condition of the house's interior, Mr. Soileau testified as follows:

> Q. Okay, do you know, when you went put [sic] the air conditioner in, were all the windows broken? I'm just wondering why you would have an AC and it would just -- the cold air would just go out, you know through the broken windows. So I'm wondering if all the windows were broken like they are now.
>
> A. Nah.
>
> Q. No, you don't remember that?
>
> A. No.

Defendant testified that he lives at the Chataignier address and proceeded to introduce his driver's license, which was issued on January 14, 2021, listing both the Chataignier address and his post office box as his address.[3] He introduced his voter registration certification from the Secretary of State, showing the Chataignier address as his registered voting address, though it shows that he initially registered to vote on August 22, 1986. The certificate is not otherwise dated. On direct examination, Defendant was asked about staying at multiple houses from time to time:

> Q. Okay, so again when you're staying at other places, it's obvious that you're not staying at 801 North Chataignier.
>
> A. Yes sir, correct.

---

[3] Despite the fact that Defendant's birthday is on July 19th, he was reissued a drivers' license on January 14, 2021. This license shows his address as 801 N. Chataignier Street and P.O. Box 117, Ville Platte, LA.

15

We conclude that Defendant offered scant evidence to rebut the compelling evidence offered by Plaintiff. His two witnesses provided little, if any, support for his assertions, and his own testimony is at best, equivocal. He counters the evidence of zero water consumption at the residence for the last three years, which was offered by Plaintiff through the testimony of Ms. Edwards, by speculating that maybe there is something wrong with the water meter. That speculation is countered by the witness who stated that if there was a problem with the meter it would have been discovered, and such problems are typically reported by the homeowner. Defendant attempted to counter his own prior testimony under oath in his divorce proceeding by asserting that maybe he did not answer those questions very well or very clearly. Eventually on cross examination, he stated that his answers may not have been correct then, but they were now. He called no witnesses to establish that he has any lawful right to be on the property at the Chataignier address. He is not listed as an owner of the property, and he offered no evidence that he holds an undivided heritable interest in the property as he claimed. He offered no written lease for the property, nor did he even testify that he had a verbal lease to live at that address. He acknowledged that the property was titled in the name of Mr. Malveaux, his mother's first husband, who she divorced, and that Mr. Malveaux remarried and had four children. He stated that his mother later married his father and gave birth to him and his sister. He could only say that Mr. Malveaux's children and his sister had given him verbal permission to live at the Chataignier address.

Defendant offered no explanation as to why he only has internet service at the Cavalier address and not at the Chataignier address, though he claims he sometimes stays at the Chataignier address because of his police work. He testified that he changed his domicile to that address many years ago and intends to continue to habitually reside there. The facts on the other hand show that he has done little to

16

repair or clean up the residence or make it more habitable than its current state, and from the evidence, it appears to have been maintained in its dilapidated condition for much longer than the last year.

Defendant's own testimony from the December 2021 divorce trial contradicts his testimony that his habitual residence and domicile is at the Chataignier address, rather than the Cavalier address, where he lived with his ex-wife for many years. On the one hand, Defendant contended that the Chataignier address was his residence domicile, yet on the other hand, he requested exclusive use of the marital home at the Cavalier address, where he clearly stated he had previously been living for several months because he wanted to prevent her from tearing up or dirtying the house. However, the home he claims as his domicile, the Chataignier address, is by all accounts from the testimony and documented photographic evidence a total wreck, with broken windows, rotted food in the refrigerator, roaches by the dozens, mouse droppings on the bed linens, etc. As the trial court stated, "I would not live there."

Defendant's only objective evidence to support his contention that the Chataignier address is, in fact, his domicile consists of using the address and/or a post office box on certain documents and asserting that the post office box is associated with the Chataignier address. This evidence provides no proof that Defendant habitually resides at this address. Taken alone, these documents might be indicative of Defendant's intent to make the Chataignier address his domicile at some point in the past, but it offers no direct proof that he habitually, physically resides at that address and has done so for at least the requisite one-year period. Moreover, Defendant's testimony that the Chataignier address is his domicile and habitual residence is refuted by Plaintiff's credible and compelling evidence, as well as Defendant's sworn testimony during the divorce trial.

17

While our well-documented policy set forth in numerous Louisiana cases favors candidacy, the policy fails in the face of so much evidence that Defendant fails to not meet the qualifications of the office to which he seeks re-election. The law as applied to the facts must govern our disposition in this case.

## DECREE

For the above-stated reasons, the judgment of the trial court is reversed, and judgment is rendered in favor of Al Perry Thomas, and against Neal Lartigue, on Mr. Thomas' petition objecting to Mr. Lartigue's candidacy, declaring Mr. Lartigue ineligible as a candidate for the office of Chief of Police, for the City of Ville Platte, and he is, accordingly, disqualified. It is, hereby, directed that the Secretary of State of the State of Louisiana be served with a certified copy of the final judgment in this case pursuant to La.R.S. 18:1410. The costs of this appeal are assessed to Neal Lartigue.

**REVERSED AND RENDERED.**